MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v. T. B. YALE.

Decided October 30, 1901.

1.—Indemnitors—Parties—Continuance.

Indemnitors liable to defendant on their bond if plaintiff recovered, were proper, but not necessary parties; defendant could not delay plaintiff's suit to bring them in, nor continue for that purpose when they were not served in time to compel appearance, but might have been.

2.—Estoppel—Contract—Pleading.

See pleading of facts attending a purchase of piling material for railroad construction, held to show estoppel of the railway company from claiming that the sale was not to such company, but to independent contractors for its construction work.

3.—Contract—Sale.

One who so conducts negotiations as to create and justify a belief by a seller that he is dealing with such negotiator and not with an independent contractor, may be bound on the contract though it was actually made by the independent contractor. See facts held to support a finding that a contract was so created.

4.—Same—Evidence—Understanding.

One claiming contract by estoppel from acts of another justifying a belief that the contract was with him, may testify to his understanding as to whom he was dealing with,—such understanding on his part being a necessary part of his case.

5.—Estoppel—Charge.

See charge on estoppel by acts of agents held sufficient on the subject of the knowledge by the principal of such agent's acts.

**6.—Agency—Estoppel—Knowledge.**

One whose conduct has authorized another to believe that a third party with whom such other person is dealing is acting as his agent, may be estopped by the acts of his supposed agent though not known to him.

**7.—Requesting Charge Already Given.**

See charge on estoppel held properly refused because covered by the general charge.

**8.—Estoppel—Evidence.**

All circumstances tending to explain defendant's acts are admissible on the issue of his contract by estoppel.

Appeal from Travis.   Tried before Hon. R. E. Brooks.

Yale sued the railway company and recovered judgment, from which it appealed.

*Fiset & Miller,* for appellant.

Appellant's twelfth, thirteenth, and fourteenth assignments of error were as follows:

12.   The court erred in admitting the testimony of Underwood and Arbegast, set out in defendant's eighth and ninth bills of exception, because the facts as to who ordered cars for shipment of the timber was incompetent, irrelevant, and immaterial and calculated to prejudice defendant's case before the jury, and further, it did not appear that Arbegast had any authority to bind defendant by his act in that regard.

13.   The court erred in admitting the testimony of Arbegast about ordering cars for shipment of the timber, and the letters set out in defendant's eleventh bill of exceptions, because it was irrelevant and immaterial to any issue in the case and was calculated to prejudice defendant's case before the jury.

First proposition under said assignments:   Under the testimony in the case and the issues made by the pleading it was irrelevant and immaterial as to whether defendant's timber inspectors had anything to do with ordering the cars for the transportation of the piling in question, and the testimony was evidently introduced for the sole purpose of showing that defendant was interested in the purchase of the timber.   It was error to admit irrelevant evidence that might prejudice defendant's case before the jury.

Statement:   Defendant's eighth and ninth bills of exception read as follows:

"(8)   Be it remembered that on the trial of this cause plaintiff offered the deposition of John C. Underwood and the following question to the witness: 'Did you do anything personally towards ordering cars on which to load said timber, and if so, state what you did?'   Defendant, before the answer was read, objected on the ground that the same is irrelevant and immaterial and does not throw any light upon who purchased the timber or who sold it, and that it was not a question as to who furnished the cars.

"The court overruled the objection and allowed the answer to be read as follows: 'I did nothing towards ordering cars except to advise Arbegast of our need of them. Arbegest was thereupon called and testified that he ordered them. At the time defendant excepted to the ruling of the court in allowing the answer to the interrogatory to be read, and now asks that this bill of exceptions be allowed as a part of the record of this cause, which was done.'

"(9)   Be it remembered that on the trial of this cause the witness A. D. Arbegast was called for plaintiff and asked whether he had anything to do with the ordering of the cars upon which the piling in question was shipped from Columbia. The defendant, when the question was put and before it was answered, objected to the witness answering on the ground that it had not been shown that he had any authority from defendant to order cars, and that his action in that respect would not be binding upon defendant. The court overruled the objection and allowed the witness to answer that he assisted in getting cars."

· Fourteenth assignment of error: .The court erred in admitting the testimony of Underwood set out in defendant's twelfth bill of exceptions, because it was immaterial on what kind of cars the timber was shipped, and the evidence was calculated to injure defendant's case before the jury.

Statement: Defendant's twelfth bill of exceptions reads as follows: "Be it remembered that on the trial of this cause the plaintiff offered the deposition of the witness John C. Underwood, and the answer to the following interrogatory: 'State what kind of cars were used on which to load this timber, and state whether they all bear the mark of one particular railroad company or of more than one, and state what company mark was on those cars;' and the witness answered: 'They were all either freight or coal cars, and all bore the mark of the same company, the Missouri, Kansas & Texas Railroad.'

"At the time the testimony was offered the defendant objected on the ground that it was immaterial, and excepted to the ruling of the court in admitting the testimony over the objection of the defendant, and now asks that this bill of exceptions be allowed as a part of the record, which is done."

*West & Cochran, E. Cartledge,* and *F. W. Shelly,* for appellee.

COLLARD, ASSOCIATE JUSTICE.—Suit by the appellee, T. B. Yale, against the Missouri, Kansas & Texas Railway Company of Texas, for the price of twenty-six cars of cedar piling. Appellee alleges that the appellant, acting through its agents, bought from him the piling, received it, and refused to pay for it. Appellant sets up that Graham & Miller purchased the piling from plaintiff, from whom it purchased and paid for the piling, and that it is not liable to plaintiff. It sought to have Graham & Miller and the American Surety Company, of New York, indemnifiers, made parties. The court refused to continue the cause to

require the surety company to answer, service having been had upon it,. but not in time to require it to answer at the term of the court in which trial was had.

There was a jury trial and verdict and judgment for plaintiff against. defendant, the railway company, for $5248.70, contract price of the piling, including interest, from which the defendant railway company has appealed.

*Findings of Fact.*—We find the facts proven as follows: A. A. Allen was vice-president, general manager, and executive officer of defendant company; A. V. Tomlin was the company's treasurer. During the latter part of the year 1898, and the first six months of 1899, A. D. Arbegast was the company's general foreman of bridge and building department and resided at Denison, Texas. E. L. McDill was timber inspector of the railway company. C. N. Stevens was defendant's purchasing agent. and had supervision of purchase of all material.

T. B. Yale, plaintiff, resided in Brazoria County, Texas, near Columbia, and in October, 1898, had a lot of cedar piling cut from his plantation. October 8, 1898, plaintiff wrote A. A. Allen, as general manager, Missouri, Kansas & Texas railway, informing him that he had a lot of cedar piling for sale, and not knowing defendant's timber buyer, addressed A. A. Allen and received from him a reply, dated October 11th, at St. Louis, Mo., which referred him, Yale, to Mr. C. N. Stevens, "our purchasing agent, who has supervision over the purchase of all material." Plaintiff then received from C. N. Stevens letter of date October 12, 1898, as follows: "Yours addressed to Mr. A. A. Allen, Dallas, Texas, has been forwarded to me for answer. If you will advise me how many piling you have of various lengths and your prices for same delivered at. the nearest junction point on our road, I will advise whether we can handle them."

Yale replied to Stevens October 31, 1898, giving information as to number of sticks of cedar timber with dimensions he then had at Columbia. Stevens wrote another letter to Yale from St. Louis, of date November 1, 1898, supposing his last letter as above had miscarried, making same inquiries as before, and stating again, "I will advise you whether we can handle it." Plaintiff replied by letter of date November 5, 1898, addressing Stevens, purchasing agent of the Missouri, Kansas & Texas Railway at St. Louis, with information that he had investigated cost of freight on cedar piling from Columbia to Houston, Texas, and that he could deliver at Houston, f. o. b., of certain named dimensions at 16½ and 19 cents according to grade. Yale heard nothing further from Stevens by mail, but in due course received a letter from E. L. Conner, of date November 17, 1898, on letterhead of Graham & Miller, contractors, at South McAlester, I. T., stating, "I have before me two letters from you to Mr. C. N. Stevens, St. Louis, in regard to cedar piling you have for sale. I represent Graham & Miller, general contractors for the Missouri, Kansas & Texas. I will try to be in Columbia on Sun-

day or Monday and look at your piling." Conner came to Columbia, as stated, and Yale saw him there and had a conversation with him with reference to the timber. Stevens had received the letters addressed by Yale to him, and had handed them to J. T. Miller, of the firm of Graham & Miller, "to take up."

McDill, timber inspector for the railway company, came to Columbia and inspected the timber plaintiff had there for sale. Arbegast also inspected the timber. Plaintiff did not see him at the time of inspecting the timber; but he told plaintiff how much of the timber he thought he could get out of the lot of timber in Columbia, and that he was employed by the defendant company. Plaintiff did not send for either Arbegast or McDill to inspect the timber. After inspection Arbegast went to Houston to make arrangements for cars to ship the timber. As the timber was inspected, McDill branded the timber selected, using the branding iron, which marked the sticks "M. K. & T. No. 4." Arbegast was present part of the time and seemed to control McDill. The timber thus branded went to the depot for shipment. Plaintiff had never seen either Graham or Miller. Afterwards plaintiff received a telegram from Graham & Miller from South McAlester, I. T., dated December 23, 1898, addressed to plaintiff, as follows: "Inspector's report on piling favorable. See letter of this date."

Plaintiff replied to Graham & Miller, tie contractors, December 27, 1898, acknowledging receipt of letter making statement of prices on the piling as given to Stevens, purchasing agent. He also stated the number of pieces inspected, and asked them to come and take them up, stating the number of pieces as 508 and stating further, "If I am in error in regard to figures, then send the inspector upon the terms stated in your letter of the 23d inst." January 12, 1899, Yale wrote E. L. Conner, at Greenville, Texas, informing him of receipt of letter from Graham & Miller which was a notification of favorable report of cedar inspector, and that he had wired reply accepting prices made by Conner. He speaks of delay in further progress and asked Conner to write if there was "any hitch."

Next Yale received letter from Graham & Miller, asking him if he had the piling, and if he would deliver it in Houston, as per his letter of December 27th, asking him to reply, and that they will make arrangements at once. Yale replied affirming his letter of December 27, 1898, stating that their reply had not been received.

He next received a telegram from Graham & Miller, dated at St. Louis, February 1, 1899, accepting his proposition on piling, and Yale replied as to receipt of the telegram and trusting that business relations would prove pleasant and satisfactory to all concerned.

The inspector that Yale asked be sent in his letter of December 27th was sent, and he was the inspector of the defendant Missouri, Kansas & Texas, McDill, and he gave Yale a paper, "Form 533, Missouri, Kansas & Tex. Railway System. The Missouri, Kansas & Texas Ry. Co. of Texas," signed by E. L. McDill, foreman of lumber yard or inspector,

Brand 4. This listed the pieces and dimensions of the pieces accepted. The form directed the foreman or inspector to fill out the form for each carload of lumber unloaded and inspected, and to forward same to Denison storekeeper or general office, as may be necessary. The form so filled up is indorsed: "March 11, 1899, E. L. McDill, Inspector Brand 4 for Mo. Kan. & Tx. Ry. Co., Cedar Piling of Thos. B. Yale, Agt. No. 16801, Filed Nov. 27, 1900, Jas. P. Hart, Clk., by D. J. Pickle, Deputy."

After Yale received telegram saying "proposition accepted," Mr. Hussey came to see Yale, who supposed he came from the same party others came from. He did no inspecting, but negotiated as to prices not agreed on. He claimed to represent Graham & Miller. McDill had come before that but went away, because some sticks were larger than Conner had represented and there was a disagreement as to price, Yale refusing to sell some of the sticks at the prices made by Conner. McDill refused to further act until the matter was settled. Hussey came to carry on the business, and he and Yale agreed on prices. The sticks Hussey agreed to purchase were to be inspected by the Missouri, Kansas & Texas inspector, and when the inspector came, he claimed to represent the railway company, and to be acting for it, and put its brand on timber as accepted. Plaintiff believed, and it was his understanding, that he was selling the timber to the Missouri, Kansas & Texas Railway Company. Plaintiff testified, and we find his testimony is true: "I supposed I was selling my timber to the Missouri, Kansas & Texas people. I inaugurated a sale to them, and it went on straight, and I supposed this was in the transaction. I made no inquiry and gave no consideration to the financial standing of Graham & Miller. Mr. John C. Underwood was my agent in reference to the selling and delivering of the timber, and I have never been paid for this piling."

It was proved by plaintiff that all the timber, the price for which is sued for, was furnished by plaintiff under the circumstances detailed in the foregoing statement at the prices claimed. It, the timber, was inspected and received by the agents of the defendant company, and all of it branded when received with the Missouri, Kansas & Texas brand. The timber was loaded on the Missouri, Kansas & Texas cars. The parties receiving the timber claimed to be acting for the defendant company.

Arbegast, who attended to the inspection and receipt of the timber at Columbia, was sent there for that purpose by defendant company's chief engineer, and he had authority to do so, and he assisted in getting cars to move it, and the defendant furnished the cars for the shipment. Arbegast told plaintiff he was employed by defendant. The evidence tends to show that plaintiff thought he was dealing all the while with defendant company and its duly authorized agents in selling and delivering the timber for the defendant, and the testimony warranted that belief.

It also shows that the price was agreed on by the agents of the company and the plaintiff as to all of it that the Missouri, Kansas & Texas inspectors would have. It was fully understood that the "stuff was

being bought through Graham & Miller for the Missouri, Kansas & Texas road." Graham & Miller were in fact independent contractors, acting for themselves and then furnishing the defendant with the timber, but plaintiff did not know this, and the acts and declarations of the company's authorized agents warranted the belief that they were acting for the defendant railway company in the transactions of the sale and delivery of the timber; and it was not until after such sale and delivery that he had notice of any facts that Graham & Miller were independent contractors. After the delay in payment and denial of his claim on the part of the defendant, he was put in possession of the real facts, but this was after the contract was made and the timber furnished thereon. Plaintiff has not been paid by anyone for the timber furnished, though the defendant company has paid Graham & Miller. The jury were warranted in finding the facts as hereinbefore stated, and we so find them. There was some testimony to the contrary tending to show that plaintiff knew facts that would put him upon notice that Graham & Miller were acting for themselves as contractors with the company, but the testimony was sufficient to warrant the conclusion reached by the jury, that from the facts in his possession plaintiff was authorized to believe and did believe he was, in the transactions mentioned, dealing with defendant company through its agents, and not with Graham & Miller on their individual account.

It was shown that plaintiff had instituted suit against Graham & Miller and the defendant company in the Indian Territory in the Federal court, for the price of the piling in question, which suit is still pending.

*Opinion.*—1. We find no error in the refusal of the court below to continue the case upon the application of defendant company, so as to litigate the liability of the American Surety Company on its contract to indemnify defendant against loss by reason of any claims which might be made on account of any ties and lumber. When the case was called for trial November 26, 1900, defendant filed a written application to continue, under oath, on the ground that the American Surety Company, of New York, had not been served in time to require it to answer at the then present term of the court, it having been impleaded upon its indemnity bond. The defendant claimed its right to make the surety company a party, because it was liable on its bond to defendant to a judgment over against it for any recovery that might be had against the defendant. The citation to the surety company was of date October 13, 1900, and was served on its general manager and local agent in Travis County, Texas, on the 16th day of October, 1900, too late to require answer at the term of trial.

The rights of the defendant to have its indemnitors made parties, so as to require them to respond over, is not disputed, but the indemnitors were not necessary parties, and the trial should not be delayed to make such parties. The original petition was filed September 17, 1900, and the amended petition, November 26, 1900. The trial was commenced

same day. Defendant was served with citation September 18, 1900. The agent of the surety company resided in Austin, and no attempt was made to cite him until nearly one month after service upon defendant. It was defendant's duty to take prompt steps to bring its indemnitors before the court, so as to cause no delay of the trial. It had ample time to do this before the trial. Failing in this, it can not complain of the action of the court in ordering trial without them. Stiles v. Hill, Fontaine & Co., 62 Texas, 431.

2. Defendant insists that the court erred in overruling its demurrer to plaintiff's plea of estoppel. It was a general demurrer. The estoppel set up is as follows:

Plaintiff says that if the relation between defendant and said Graham & Miller was that of independent contractors, that such relation was unknown to this plaintiff and was by defendant concealed from plaintiff, and that by the act of defendant's officers, A. A. Allen as its general superintendent and C. N. Stevens its general purchasing agent, opening up and conducting negotiations with this plaintiff for the purchase of his timber, and agreeing to give him an answer to his proposition, and in sending one E. L. Conner, claiming to act for said Graham & Miller, as general contractors for defendant, to personally interview this plaintiff with reference thereto, and the result of such interview being communicated to defendant for the purpose of its passing upon the same, and by reason of defendant's sending one E. L. McDill and A. D. Arbegast, its own special officers, to inspect plaintiff's said timber before the trade was finally closed as to price, and the fact that the said Graham & Miller did nothing beyond negotiate and ascertain the price at which plaintiff was willing to sell his timber, and that no delivery was made or agreed to be made of any timber to said Graham & Miller, but the selection of the same from a large number of sticks of timber owned by this plaintiff was to be made, and was in fact wholly made by defendant's officers and agents, viz., A. D. Arbegast, as foreman of bridges and buildings for defendant, and one E. L. McDill, timber inspector in defendant's employ, and from all the acts and doings of defendant's said officers and agents in its regular employ with reference to the sale, between the time when the negotiation was begun October, 1898, until the contract was finally closed by the selection and delivery of said twenty-six cars of timber to defendant, plaintiff was led to believe and did believe that he was making sale of his said timber to defendant and that said Graham & Miller were the agents of defendant authorized merely to contract as to the price to be paid and upon whose order the said timber should be billed as delivered to defendant, and that plaintiff did not extend credit to said Graham & Miller, but expected them, as such purchasing agents, to procure defendant to pay this plaintiff therefor; and plaintiff says, that as a man of ordinary prudence he was justified in relying upon the acts and conduct of defendant's said officers in holding out said Graham & Miller and the said E. L. Conner and D. B. Hussey as being its

duly authorized agents and not independent contractors, and defendant is estopped to deny that said parties were its duly authorized agents to make said contract and bind defendant to pay plaintiff the said stipulated and agreed price for his said timber. And this plaintiff is ready to verify."

The elements of estoppel are set up in the foregoing plea, and if the averments are true, defendant would be estopped to deny that Graham & Miller were its agents in the purchase of the material in question. The general demurrer does not indicate any special defect in the plea, nor does the brief of the appellant. If plaintiff, by the conduct of defendant, was led to believe and did believe, as a man of ordinary prudence, that he was selling his timber to the defendant and not to Graham & Miller as independent contractors, and plaintiff did not extend the credit to them, but relied upon defendant to carry out the contract of purchase, defendant would be estopped from denying the agency, and would be bound to perform the contract. The plea avers such facts. The special deficiency in the plea is not discernible without a special exception, and we are not called on to point it out on the general demurrer.

3. It is claimed by defendant that the court erred in overruling its motion, after plaintiff rested and before it offered any testimony, to instruct the jury to return a verdict in its favor.

The motion is in the nature of a demurrer to the sufficiency of plaintiff's testimony to entitle him to verdict. The rule in such cases is that the demurrer or motion admits every material fact which the evidence tends to prove on behalf of the plaintiff. Bradberry v. Reed, 23 Texas, 261; Pitt v. Texas Storage Co., 4 App. C. C., sec. 295. A review of the testimony shows that plaintiff began his negotiations to sell his timber with officers of the company and they corresponded with him concerning the matter, when afterwards, without any notification on the part of the company or any one else, Graham & Miller continued these negotiations, the previous negotiations having been referred to them by the defendant. The evidence shows that plaintiff believed, and had the right to believe, that he was still dealing with defendant, nothing having been said by its agents or by Graham & Miller before the parties were bound and had become obligated to each other, plaintiff having furnished the timber and defendant having received it, before he discovered that Graham & Miller were independent contractors. The first information of plaintiff that his negotiations might be conducted with Graham & Miller was a letter from E. L. O'Conner, who said he represented Graham & Miller, which informed him that they were "general contractors for the Missouri, Kansas & Texas," and that he (Conner) had plaintiff's letter to C. N. Stevens, purchasing agent of the company. Stevens had delivered to Graham & Miller the letters he had received from plaintiff. Plaintiff had the right to believe that the company had referred him to their agents who would continue the negotiations with him. All the conduct of defendant's agents and others after this only served to con-

firm plaintiff in his belief that he was dealing with the railroad. Nothing occurred to undeceive him, and we find that the facts warranted him in that belief, and the jury were warranted by the testimony in finding that he did so believe, and that he acted in good faith in acting on that belief.

4. Appellant contends by assignment of error that the court erred in allowing Yale to testify as to his understanding as to whom he was selling his timber. His understanding was a part of his case on estoppel, and indicated the deception practiced upon him and his good faith in acting with Graham & Miller, as the agents of the defendant. His good faith was in issue, and it was not improper to show it. His conclusion from the acts of the parties was a matter proper for investigation.

5. The verdict was warranted by the testimony. The testimony was sufficient to authorize the jury in finding that defendant was estopped.

6. Appellant claims that the court erred in refusing defendant's charge which instruced the jury to return a verdict for defendant, "because there was no testimony sustaining plaintiff's plea of estoppel, the uncontradicted evidence showing that Graham & Miller bought the piling on their own behalf, and defendant's agents did and said nothing that estopped it from relying upon the fact that Graham & Miller were independent contractors." The facts show that the above assignment is not well taken, but that the contrary is true.

7. Appellant says "the court's charge stating under what circumstances a person's conduct prevents him from denying agency, is erroneous in not including as a necessary element that such person must have known that such alleged agent was assuming to represent him, and had reason to believe so before he was estopped." The court instructed the jury as to agency, first, that the evidence fails to show that Graham & Miller were the agents of defendant, and that the main question to be determined was whether or not defendant by its conduct in reference to the purchase is estopped to deny that Graham & Miller were its agents in the transactions, under the rules given in the charge. The court then charged as follows:

"When one party, by his conduct and dealing in reference to a particular transaction, has induced or caused a second party to believe that a third person was the agent of said first party in such transaction and said conduct was of such character as to cause or warrant a person of ordinary care and prudence in so believing, and such second party deals with said third party in good faith and in the exercise of ordinary care and prudence, relying upon said third party being the agent of said first party, then under such circumstances said first party will not be permitted to deny that said third party was his agent in said transaction if the same be necessary to protect the rights of the second party."

The court charged on the facts applying the law of estoppel as follows: "Now, if you believe from a preponderance of the evidence in this case that plaintiff wrote to defendant's agents A. A. Allen and C. N.

Stevens in regard to the sale of certain pilings, and that they turned over said letters to Graham & Miller without informing plaintiff of their relationship to defendant company, and that the further conduct of defendant's agents in inspecting, passing upon, and receiving said piling and otherwise, as appears from the evidence in this case, up to the time said contract of sale was complete, was of such character as to induce and warrant a person of ordinary care and prudence to believe that the firm of Graham & Miller were the agents of the defendant company in making the purchase of the piling in controversy from plaintiff, and you further find that plaintiff in good faith and in the exercise of ordinary care and prudence relied upon and believed that Graham & Miller were the agents of defendant company in buying said pilings, and was so led to believe by the said conduct of defendant, and so believing sold said pilings to Graham & Miller, then you are instructed that the defendant would be estopped from denying that Graham & Miller acted as their agents in such transaction, and if you find the facts to be as stated in this paragraph of this charge you will find for the plaintiff against the defendant company.

"You are further instructed that the defendants can not be estopped from denying that Graham & Miller were their agents in purchasing said piling from plaintiff by anything that happened after the completion of the sale by plaintiff to Graham & Miller, which was when the price had been agreed upon and in this case when the piling had been inspected and passed upon by the inspectors, and you will not consider such evidence as to anything occurring since the completing of the sale of said piling in determining whether or not defendant is estopped from denying the agency of Graham & Miller.

"You are further instructed that unless you believe from a preponderance of the evidence that plaintiff in good faith believed that Graham & Miller were acting as the agents of the defendant company in buying his said piling at the time he sold the same, and unless you further believe that he was led to so believe from the conduct of defendant company in reference thereto, and unless you further believe that said conduct of defendant company was of such character as to justify a person of ordinary care and prudence in believing that said Graham & Miller were the agents of defendant company in making the purchase of said pilings, and that because of such belief of their said agency plaintiff sold to Graham & Miller the pilings in controversy, you will find for the defendant company."

We believe the court's charge is the law of the case as presented on the facts. The evidence shows that defendant, by correspondence with plaintiff, so acted as to authorize him, as a man of ordinary prudence, to believe Graham & Miller were its agents in the transaction of purchasing the timber, and that plaintiff acted in good faith with them upon the assumption of such agency selling the timber, believing them to be such agents. Defendant would be estopped in such case. The court's charge is sufficient on this subject. It was not necessary that defendant

should know that Graham & Miller were assuming to act for them, in order to bind defendant. If defendant authorized them to act for it, or by declarations and conduct authorized Yale to believe, as a man of ordinary prudence, that they were its agents in the transaction, it could not deny the agency after it had been accomplished. In this character of estoppel it was not necessary to bind the principal that he should stand by and see the work as it was done by the agent, and so encourage the belief of agency.

We believe the court's charge presented the necessary elements of estoppel involved in the case. See Guest v. Lubbock, 5 Texas, 545, 546; Perrin v. Perrin, 62 Texas, 480. As to estoppel in pais applicable to this case, see Herm. on Estop., sec. 7, pp. 5, 6. "If a man, whatever his real meaning may be, so conducts himself that a reasonable man would take his conduct to mean a certain representation of facts, and that it was a true representation, and that the latter was intended to act upon it in a particular way, and he with such belief does act that way to his damage, the first is estopped from denying that the facts were as represented." 1 Herm. Estop. and Res Judicata, p. 6, sec. 7, subdiv. 3.

The evidence in this case shows that if Graham & Miller were not in fact agents of defendant, the latter acted in the transaction so as to induce the belief on the part of plaintiff that they were its agents to act as they did, and a man of ordinary prudence would have acted as plaintiff did. The court's charge was sufficient, and is not subject to the objection urged.

8. The amendment to the court's charge requested by defendant and refused by the court was not applicable. If plaintiff acted on the conduct and acts of defendant in dealing with Graham & Miller as its agents in this matter, and defendant was responsible for the course adopted by plaintiff, it would be immaterial whether or not defendant knew plaintiff was so acting.

9. There was testimony supporting the issue submitted by the court as to estoppel by conduct of defendant, and it was not error to have the jury pass upon it.

10. The court's charge was as favorable to defendant as it ought to have been in charging that "defendant could not be estopped from denying that Graham & Miller were its agents in purchasing the piling from plaintiff by anything that happened after the completion of the sale by plaintiff to Graham & Miller, which was when the prices had been agreed upon and the piling inspected and accepted by the inspectors, and you will not consider such evidence as to anything occurring since completing the sale in determining whether or not defendant is estopped from denying the agency of Graham & Miller." It was not error to refuse the charge requested on the same subject.

11. No error is pointed out in the twelfth and thirteenth assignments of error as to admission of testimony of Underwood and Arbegast.

12. Nor do we find error, as contended in the fourteenth assignment of error complaining of the court's action in permitting Underwood to

tell what kind of cars were used on which to load the piling, and that they were all marked in the mark of the defendant company, Missouri, Kansas & Texas Railroad. It can not be said that the testimony was immaterial under the issues in the case. All circumstances tending to explain defendant's acts in relation to the receiving of this piling were admissible.

We have considered every question presented in this case, and find no error has been called to our attention requiring a reversal, and we conclude that the judgment of the lower court should be and it is affirmed.

*Affirmed.*

Writ of error refused.