CITIZENS' STATE BANK v. McSHAN et al.
(No. 5385.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 23, 1914. Rehearing Denied Jan. 20, 1915.)

1. APPEAL AND ERROR (§ 1002*)—REVIEW—VERDICTS.

A verdict based on conflicting evidence will not be disturbed on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. § 1002.*]

2. ESTOPPEL (§ 83*)—EQUITABLE ESTOPPEL.

Where plaintiff paid a note given by his father to defendant bank, and the bank led plaintiff to believe that he would receive a note payable to the father and in the bank's possession, the bank is estopped to deny plaintiff's right to the note on the ground that it was not actually deposited as collateral to secure that debt.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 218, 227–229; Dec. Dig. § 83.*]

3. FRAUDULENT CONVEYANCES (§ 225*)—PERSONS ENTITLED TO ATTACK CONVEYANCE.

Where a bank held a note as collateral, and plaintiff paid off the obligation, receiving the collateral, the absolute title to the collateral did not pass to plaintiff, and, the debtor having conveyed to plaintiff property in excess of the debt paid, the bank, if still a creditor of the debtor, may attack the transfer of the collateral note as in fraud of creditors.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 653–657; Dec. Dig. § 225.*]

4. FRAUDULENT CONVEYANCES (§ 308*)—EVIDENCE—SUFFICIENCY.

Whether the transfer of a note by a debtor was in fraud of creditors *held*, under the evidence, for the jury.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 923–940; Dec. Dig. § 308.*]

5. FRAUDULENT CONVEYANCES (§ 19*) — DEFENSES.

A debtor's wife voluntarily incumbered her property to pay the husband's debts. Thereafter the son of the debtor discharged some of the obligations and received a note payable to the debtor, which had been put up as collateral. *Held* that, where property in excess of the sums advanced by the son was transferred to him, a creditor of the debtor might attack, as fraudulent, the transfer of the collateral note, though some of the property conveyed to the son was the separate property of the debtor's wife.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 24, 25; Dec. Dig. § 19.*]

Appeal from District Court, Jim Wells County; W. B. Hopkins, Judge.

Action by W. H. McShan against the Citizens' State Bank and others. From a judgment for plaintiff, the named defendant appeals. Reversed and remanded.

V. W. Taylor, of Alice, and Jas. M. Taylor, of Corpus Christi, for appellant. G. R. Scott and Boone & Pope, all of Corpus Christi, for appellees.

CARL, J. W. H. McShan, appellee, brought this suit against J. C. Adkins, Charles Walker, and J. R. Scott, the last two composing the firm of Scott & Walker or Scott & Walker Mercantile Company, and the Citizens' State Bank of Alice, appellant. The controversy is over a note for $850.45, executed by J. C. Adkins about July 8, 1912, payable to Scott-Walker Mercantile Company six months after its date, bearing 10 per cent. interest per annum, and having the usual 10 per cent. attorney's fee clause. This note was indorsed by Scott & Walker, by C. C. Walker, to H. F. McGill, and by the latter, without recourse, indorsed to C. H. McShan, and by McShan indorsed in blank.

It is alleged that before the maturity of this note C. H. McShan indorsed same in blank and deposited it with appellant bank as collateral security for the payment of a certain note for $2,000, executed by Addie W. McShan and C. H. McShan, payable to the Citizens' State Bank of Alice, and that, before maturity, appellant bank, for a valuable consideration, assigned the $2,000 note to the plaintiff, together with all property and securities appellant had held of C. H. and Addie McShan to secure said note, and that thereby appellee became the owner and was entitled to the possession of the $850.45 note sued on. But it is alleged:

"That either through error or oversight on the part of the Citizens' State Bank, and on the part of the plaintiff, the note herein sued on was not delivered to plaintiffs with said above-described note, but was left in the possession of or retained by the defendant Citizens' State Bank of Alice, Tex., without the knowledge or consent of plaintiff."

The bank answered and substantially pleaded the facts as to the execution and different transfers of the $850 note, except that it is shown to have been dated about August 8, 1912; and that, by the transfer of said note in blank by C. H. McShan and delivery to the bank, it became the owner thereof in due course of trade, before maturity, and without notice of any infirmity therein, and without notice of any claim of W. H. McShan thereto; and that, after appellant bank acquired said note, C. H. McShan and his son, W. H. McShan, entered into a fraudulent and collusive agreement for the purpose of causing the makers and indorsers of the note to refuse payment of the said $850.45 note, and notified such parties not to pay same. Judgment is sought as to title to the note and also against the makers and indorsers.

In a first supplemental answer, filed June 25, 1914, appellant pleaded:

"That if any such agreement, for the purpose of transferring the note herein sued for by this defendant to plaintiff, was ever made, which this defendant especially denies, to the effect that this defendant would assign and transfer and deliver the note herein sued for to plaintiff when plaintiff should pay or have paid the $2,000 note described in plaintiff's pleadings, said agreement is no longer binding upon this defendant, because this plaintiff, with full knowledge of the fact that this note herein sued for was not delivered at the time of the trans-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

fer of said $2,000 note and the payment of the same, and that said $2,000 note and the security that this defendant held for payment of same were accepted by plaintiff, and plaintiff, with full knowledge of all these facts, made payment of said $2,000 note to this defendant; that no question or objection was raised or made by plaintiff at the time of said transaction when he accepted the transfer of said $2,000 note, and the securities of same, paying this defendant for same; that this note was part of said transaction, or that this plaintiff had become the owner and entitled to the possession of the same; and that it was after the closing of said transaction that plaintiff ever made demand for this note."

To this appellee replied that when he purchased the $2,000 note, the note sued on was attached thereto as collateral security, and it was understood and agreed between appellee and the bank that he should acquire all the securities to said $2,000 note, including the note sued on, and that it was well known to appellant that appellee purchased said note with such understanding and agreement, and denied that the note in controversy was up for any other purpose than to secure the $2,000 note. He further pleaded that, if said note was up for any other purpose, he purchased the $2,000 note without the knowledge of any claim on the part of appellant to said note as collateral to secure the payment of any such indebtedness, and that, at the time he purchased said note, it was understood and agreed that he should receive and be entitled to all the security held by appellant to secure said note, including particularly the note sued on; that, when appellee paid appellant the amount of the purchase price of the $2,000 note, it was intended that the note in controversy and all other securities with said $2,000 should be assigned to appellee. It is further alleged that appellee paid the purchase money of said $2,000 through his agent, the Alice State Bank, and, at the time the purchase was made and the $2,000 note delivered to the Alice State Bank, it did not know that the note in controversy was not attached and delivered, and did not discover same until after said delivery, and, immediately upon discovering that it was not attached, demanded it of appellant and met with a refusal to deliver same.

Appellee alleged that the failure of appellant to deliver said $850.45 note was due to an error, oversight, or fraud on the part of appellant, and alleges also that he acted on the agreement made as to securities and was thereby deceived.

Appellant also pleaded that it held C. H. McShan's note for $200, due 90 days after August 28, 1912, and McShan desired a further credit of $1,341.96, and, for the purpose of partially securing this debt, the $850.45 note was left with it, and in addition thereto McShan was to execute a trust deed on about $20,000 worth of property which he claimed to own in Jim Wells county; that pursuant to said agreement the appellant extended to him credit to the amount of $1,341.96, as aforesaid, in addition to the $200 note, but that McShan refused to give a trust deed on any of the vast estate he had in Jim Wells county, and conveyed his property to appellee, as is alleged, for the purpose of defrauding appellant and other creditors.

Upon the trial, the causes of action against J. R. Scott were dismissed, and the case was submitted on special issues, and in response thereto the jury found:

(1) That C. H. McShan did not put up the $850.45 note with the Citizens' State Bank as collateral security for the $2,000 note.

(2) That there was an understanding and agreeement between W. H. McShan and H. R. Kimbler, representing the bank, before maturity of the $2,000 note, to the effect that said W. H. McShan would pay off said $2,000 note and have same transferred to him, at maturity thereof, and that all securities belonging to said $2,000 note would be transferred to said W. H. McShan.

(3) That the note in controversy was attached to the mortgage or deed of trust given by Addie W. and C. H. McShan to secure said $2,000 note at the time such agreement and understanding was had.

(4) That, at the time of the agreement, H. R. Kimbler led W. H. McShan to believe that he was to get the note in controversy as a part of the security for the $2,000 note.

(5) And that the appellant held two notes of C. H. McShan, one for $200 and the other for $1,341.96, both past due, and C. H. McShan had failed to pay same, and that the bank held the note for $850.45 as security for said two notes, under an agreement with C. H. McShan.

[1] Upon these findings by the jury, the court entered judgment for appellee W. H. McShan for title and possession of the note as against the bank, and judgment against the maker and indorsers of the note in favor of appellee, except that Scott was dismissed, and judgment was that appellant take nothing by its prayer for judgment on the note. From that judgment this appeal is prosecuted by the appellant bank.

It will be noted that from the findings of the jury it is established that the $850.45 note was not put up by C. H. McShan as collateral security for the $2,000 note, but by the second, third, and fourth findings the jury said that the agreement between W. H. McShan and H. R. Kimbler, representing and acting for the bank, was that appellee was to get all the securities belonging thereto, and that at the time the note in question was attached to the mortgage to secure the $2,000 note W. H. McShan was purchasing. Both W. H. and C. H. McShan testified that he was to get this note; and T. H. Clark, cashier of the Alice State Bank, the agent of appellee in the transaction, who took up the note, testified that his instructions were to have the $2,000 note and all securities transferred to appellee, but that nothing was said

about any particular security, and he took what appellant gave him and did not know any better until some time after, when he was requested to collect it. H. R. Kimbler, vice president of appellant bank, said:

"I refused to accept the note as collateral for a loan, and he then substituted a piece of property in Alice, and made a note for $2,000, giving a deed of trust as security. When this occurred, McShan said, 'Everything I have in this world is up for my debts; put this in your note case'—which I did."

In fact, without going further into detail, the evidence was sufficient to sustain the findings of the jury that the note was left with the bank with the deed of trust security. It was ample to show an assignment of whatever interest the bank may have had in the note. When there is as much testimony touching the agreement between the bank and W. H. McShan as there is in this record, this court will not disturb a finding of the jury to the effect that, when McShan agreed to take up the $2,000 note, he was to get all the collateral attached, and that the note in controversy was attached to the mortgage securing the note. Beer v. Landman, 88 Tex. 450, 31 S. W. 805.

[2] The facts pleaded by appellee in the court below, and proof sustaining same, show that appellant is estopped to deny the assignment of the note in controversy along with the $2,000 note. When the jury found these facts, the appellee was entitled to a judgment as against the bank for the note; and it matters not whether the note was originally placed there as collateral for the large note, if appellant, through its agent, led W. H. McShan to believe that he was getting the note in controversy as collateral when he took up the other. This is what the jury found the bank did; and, having so represented that the $850.45 note was a part of the collateral to the large note, equity will estop appellant from now asserting that said note was not a part of the collateral.

The first, second, eleventh, twelfth, thirteenth and fourteenth assignments are overruled. Texas Banking Co. v. Hutchins, 53 Tex. 61, 37 Am. Rep. 750; White v. Downs, 40 Tex. 226; M., K. & T. Ry. v. Yale, 27 Tex. Civ. App. 10, 65 S. W. 57; Weinstein v. Bank, 69 Tex. 38, 6 S. W. 171, 5 Am. St. Rep. 23; Burleson v. Burleson, 28 Tex. 383; Leon County v. Vann, 86 Tex. 707, 27 S. W. 258; Risien v. Brown, 73 Tex. 135, 10 S. W. 661; Echols v. McKie, 60 Tex. 41; Whiteselle v. Texas Loom Agency (Civ. App.) 27 S. W. 309; Lucas v. Johnson (Civ. App.) 64 S. W. 823; Edwards v. Dickson, 66 Tex. 613, 2 S. W. 718; Schwarz v. National Bank, 67 Tex. 217, 2 S. W. 865; Walker v. Erwin, 47 Tex. Civ. App. 637, 106 S. W. 164. The jury said he was to get it, and that is the end of the matter, when the evidence is sufficient to sustain the finding, as it is in this case.

[3] The third, fourth, fifth, sixth, ninth, and tenth assignments raise the issue of fraud and the refusal of the court to submit special issues to the jury touching the disposition of C. H. McShan's other property and his alleged collusion with W. H. McShan to prevent the payment of the note in controversy by the maker and indorsers thereof.

It will be noted that the transfer of the $2,000 note and collateral from the bank to W. H. McShan was dated December 30, 1912, and filed for record January 4, 1913, while the sale of their property by C. H. and Addie W. McShan to W. H. McShan was dated February 13, 1913, and filed for record the same day. So, while we have held that appellant would be estopped to deny that it sold the note in controversy as collateral security for the $2,000 note, it is not held that the legal title to the note passed to W. H. McShan by the purchase of the $2,000 note. He thereby acquired the $850.45 solely as collateral security; and while the bank could not assert, as against W. H. McShan, that it had a right to hold the note as security for the other two notes of C. H. McShan held by it, still the legal ownership or title to this note is not thereby affected. The sale of the note and the other property was not consummated until February, 1913, whereby the title to the note in controversy and the other property of C. H. McShan and wife purported to be conveyed to their son, W. H. McShan. And while the bank will not be heard to deny that it assigned the note, for collateral purposes, free from any claim it had by reason of holding the same, as found by the jury, to secure the $1,341.96 and $200 notes, when we come to the passing of the legal title to said note, along with other property, another and quite a different turn is given the case.

As to the other two notes still held by the bank, it was a creditor of C. H. McShan, and would certainly be in a position to attack any fraudulent conveyance or sale of his property made for the purpose of hindering, delaying, or defeating his creditors, and this could be done by attacking it either in whole or in part. If W. H. McShan received more than enough property to satisfy his claim, aside from the $850.45 note, we see no reason why the sale outright of said note may not be attacked, as was done in this case. For it has been held that a creditor may in the same suit recover judgment on his demand and have a fraudulent conveyance set aside. Ward v. McKenzie, 33 Tex. 316, 7 Am. Rep. 261; Cassaday v. Anderson, 53 Tex. 535; Shirley v. Railway, 78 Tex. 148, 10 S. W. 543; Washington County v. Schulz, 63 Tex. 33; Hart v. Rust, 46 Tex. 573; Farrar v. Bates, 55 Tex. 199.

[4, 5] There is evidence in the record tending to show that C. H. McShan and wife conveyed to appellee, their son, about $8,000 worth of property and expressed a cash consideration of $2,500, which was not paid, and appellee assumed the payment of about $5,-

500 in debts; that all of the property was worth about $2,000 more than was paid for it, and W. H. McShan took the property to keep it from being sold under the hammer and being sacrificed. There is also evidence that C. H. McShan told Ed Stevens and A. S. Price, just prior to making the conveyance of the property, that he was going to convey all of his property to Will (W. H. McShan), file the Alice Ice & Light Company in bankruptcy, in which he owned 98 per cent. of the stock, furnish Will the money with which to buy it in, and they (his creditors) would not get a cent. The testimony further showed that a petition in bankruptcy was filed for the Alice Ice & Light Company, its property sold, and Will bought it in.

Under these circumstances, we think there was certainly sufficient evidence on the question of a fraudulent sale to have that issue submitted to the jury; and, if the sale was fraudulent, it was as though no sale had been made. It is immaterial that a large part of the property put up to secure the debts may have been the separate property of Mrs. Addie W. McShan. It is enough that she had voluntarily incumbered it to pay these debts; and when she and her husband conveyed it to their son, if it more than paid him, we see no reason why the Citizens' State Bank of Alice, or any other creditor, could not plead and prove those facts and, to the extent of the note in controversy, defeat the sale. The assignments mentioned are sustained, except the fourth, which we do not sustain on account of the form of the special issue requested.

The errors complained of in the seventh and eighth assignments, if error, were harmless, in view of the jury's finding.

The judgment is reversed, and the cause is remanded for trial.