W. L. Cabell et al. v. Hamilton Brown Shoe Company et al.

No. 7108.

1. **Nonresident Parties—Practice.**—Suit against Cabell as United States Marshal and his sureties for the value of goods seized and belonging to plaintiffs. The marshal had taken an indemnity bond; the principals, however, were nonresidents. The marshal made his indemnitors parties and asked that the case be continued in order to obtain service on the principals. This was refused. *Held*, without deciding that the statute (Sayles' Civ. Stats., art. 4525a) relating to damage suits against "any sheriff, constable, or deputy of either," can be applied to United States Marshals, that the court did not err in refusing to postpone the case.

2. **Same.**—The suit for damages for the seizure of the goods was not a suit on the indemnity bond; no writ of attachment could issue in the suit, and there was no method by which service of citation could be had upon the nonresident principals. It would have been idle to attempt the service on them.

3. **Jury Docket.**—Answer was filed March 9, 1888, and a jury demanded, but the jury fee was not paid until April 12, which was after the time allotted for the trial of jury cases had passed, and when the cause was called on the nonjury docket the defendant asked that it be placed on the jury docket. This the court refused. As early as March 27 the counsel for defendant had been informed by the court that no cause would be placed on the jury docket before payment of the jury fee. *Held*, the refusal of jury was no ground for reversal.

4. **Jury Cases—Statutes—Practice.**—District Courts are required to keep a jury docket. (Rev. Stats., arts. 1289, 3071.) Clerks are required to keep a jury docket, and thereon to place cases under the order of the court when the jury fee is paid (Rev. Stats., arts. 3069, 3070), and whenever the failure to make this payment is delayed for such time as to materially affect the rights of the parties or to interfere with the orderly conduct of the business of the court a jury trial ought to be refused.

5. **Joinder of Parties — Indemnitors.** — In an action for damages against the United States Marshal and his sureties for the wrongful seizure of goods the property of the plaintiffs the sureties on the indemnity bond were properly joined as defendants. Stiles v. Hill, 62 Texas, 431.

6. **Indemnitors Jointly Guilty with Officer.** — All persons who contribute to the commission of a tort through which injury results to another are responsible as principals, and such persons as induce a wrongful levy to be made by giving to the officer making it an indemnity bond may be treated as trespassers.

7. **Guardian and Ward — Contracts.** — A guardian in business becoming involved made a conveyance of his stock of goods to parties to whom he was indebted "in consideration of the settlement in full of the several debts aforesaid  *  *  * and of the cancellation and receipt in full of said debts and claims on the part of the several creditors aforesaid." One of the named creditors was a minor and the ward of the grantor. The minor was absent and knew nothing of the transfer before the seizure of the goods. *Held:*

1. That the guardian could not make with himself such a contract for his ward.

2. The transfer of the goods to the extent of the attempted sale to the minor was void, and the goods to that extent were subject to the seizure.

3. If the minor had personally assented to or made the contract it would not have been void, but only voidable at his instance, and he could have recovered for the seizure.

Appeal from McLennan. Tried below before Hon. Eugene Williams. The opinion states the case.

*Clark, Dyer & Bolinger*, for appellants. The brief did not reach the Reporter.

*Herring & Kelley*, for appellees.—1. The court did not err in refusing to continue the case in order that Samuel C. Davis & Co. might be brought in as parties to the suit.

2. The court did not err in calling the case upon the nonjury docket. Appellants failed to avail themselves of their privilege of having a jury. They did not pay the jury fee, neither did they have the case put on the jury docket so that the case could have been called for trial on the jury docket during the term of court.

3. The indemnifiers were liable with General Cabell as a wrong-doer if they aided, counseled, encouraged, advised, and induced him to commit the trespass complained of, as was alleged, by executing to him a bond on the 27th of October, 1887, in the sum of $10,000, conditioned to save him harmless and to defend and protect him from all suits, etc., arising out of the levy, etc. Plaintiffs did not seek to recover on the bond as an obligation. The bond is used by plaintiffs to show their wrongful participation in the seizure. After its production in evidence General Cabell could have complained upon rendition of judgment against him on account of the trespass had the judgment not protected him by giving him the relief he prayed for over against his indemnifiers. They do not complain in their assignments of error herein of the recovery over in favor of General Cabell.

4. While a minor may not always be able to divest himself of title to property, there is no law prohibiting a minor from having title to property vested in him by any of the modes of conveyance known to the law. Rev. Stats., arts. 2497, 2522, 2544, 2546, 2547, 2550; Lewy v. Fischl, 65 Texas, 320; Bank v. Eborn, 4 South. Rep., 387.

5. John La Prelle, guardian of Reagan Dickson, acting under a father's will without bond, had the right to take and receive property for the benefit of the minor's estate in settlement of a claim against a party who was in the act of becoming insolvent. He as guardian had the same right and power to take the goods from John La Prelle, a failing merchant, as from any other person in a failing condition. The debt due the minor was clearly established, and there could be no fraud in securing it as between Reagan Dickson and the other creditors of John La Prelle.

6. The court did not err in rendering judgment against General Cabell's indemnitors. It was alleged by plaintiff that the indemnitors had induced and aided General Cabell to commit the trespass complained of. 3 Ct. App. C. C., sec. 137; Brandt on Guar. and Sur., sec. 423; 2 Freeman on Ex., sec. 273; 1 Suth. on Dam., 212; Murfree on Sheriffs, sec. 634; Herring v. Hoppock, 15 N. Y., 413; Davis v. New-kirk, 5 Denio, 92; Lesher v. Getman, 30 Minn., 312; Root v. Chand-

ler, 10 Wend., 110; Lovejoy v. Murray, 3 Wall., 1; Murfree on Sheriffs, 628, 634, 615; Cool. on Torts., 133.

STAYTON, CHIEF JUSTICE.—This action was brought by appellees against W. L. Cabell, United States Marshal, the sureties on his official bond, and against the sureties on an indemnity bond given to the marshal to indemnify him in levying a writ of attachment sued out by Samuel C. Davis & Co. against John La Prelle upon personal property claimed by appellees. The principals on the indemnity bond were not made parties, it being alleged they were not residents of this State and that they had no property within it. The marshal alleged that the principals on the indemnity bond had property within this State, made them parties to the suit, prayed judgment over against them in case judgment went against him, and asked that the cause be continued that they might be cited, but this was refused. The sureties on the indemnity bond also asked that their principals be made parties, and that the cause be continued for service upon them.

The cause was tried and resulted in a judgment for plaintiffs, from which the defendants appeal, and it is urged that the court erred in refusing to grant a continuance to enable the defendants, who so sought to obtain service on the nonresident principals on the indemnity bond.

The statute provides that "whenever a sheriff, constable, or deputy of either has been sued for damages for any act done in their official character, and they have taken indemnifying bonds for such acts so done by them, upon which said acts suits for damages are based, the said sheriffs, constables, or deputies shall have the right to make the parties principal and surety on such bond of indemnity parties defendant in suit for damages, and the cause may be continued for the purpose of obtaining service on such parties so made in said cause." Sayles' Civ. Stats., art. 4525a.

The statute does not in terms embrace United States Marshals, and it is not necessary in this case to determine whether the statute can be applied to them; for if it may be it is evident that this cause should not have been continued for a purpose which could not have been accomplished by any process the court could have issued. The principals on the indemnity bond were not residents of this State, and neither service by publication nor notice actually served without the State could have conferred jurisdiction over them such as would have empowered the court to render a personal judgment against them.

This was not an action on the bond or on any cause of action that would have authorized the seizure of their property under attachment or other writ which would have authorized its subjection to sale in satisfaction of a judgment to be rendered on service by publication or by notice served without the State, and the fact that they may have property within this State was immaterial; and it was not shown that they

then were or ever would be willing voluntarily to appear, nor that they would be at any time within reach of the process of the court. Were this an action on the indemnity bond it might be maintained against the sureties alone, the principals residing beyond this State. Rev. Stats., art. 1208.

The original answer was filed on March 9, 1888, and a jury was then demanded by defendants, but the jury fee was not paid until April 12, which was after the time allotted for the trial of jury cases had passed, and when the cause was called on the next day for trial as a nonjury case defendants asked that it be placed on the jury docket and be tried by a jury, which the court refused. As early as March 27 counsel for defendants had been informed by the court that no case would be placed on the jury docket until the jury fee was paid, and under this state of facts we are of opinion that the court did not err in refusing a jury.

It has been held that a failure to pay the jury fee on the day a jury is demanded will not of itself deprive a party of the right to a trial by jury, but this was in cases in which it appeared that no delay or injury resulted, and in which there was no unreasonable delay in paying the jury fee. In the case before us the parties asking a jury seemed indisposed to pay the jury fee so long as there was a probability that they could get a trial by jury, and after it was seen that this could not be had were solicitous that it should not otherwise be tried, and had the court granted the application made when the cause was called for trial the inference is that defendants might thus have obtained a continuance.

District Courts are required to fix a day for taking up jury cases (Rev. Stats., arts. 1289, 3071); clerks are required to keep a jury docket and thereon to place cases, under the order of the court, when the jury fee is paid (Rev. Stats., arts. 3069, 3070), and whenever the failure to make this payment is delayed for such time as to materially affect the rights of the parties or to interfere with the orderly conduct of the business of the court a jury trial ought to be refused.

It was claimed by defendants that there was a misjoinder of parties, in that the sureties on the indemnity bond were joined with the marshal and the sureties on his official bond, and an exception presenting that question was overruled.

If the statute before referred to has application to marshals there can be no doubt of the propriety of making all parties to the indemnity bond parties to the action, although a continuance to obtain service on those not residents of the State could not be granted; and if they may be made parties for any purpose, there is no reason why all matters in which they are interested may not, under the liberal practice adopted in this State, be litigated in a case in which a judgment is sought against the marshal and his sureties. If the statute be not applicable to marshals, it indicates a rule as to the joinder of indemnitors which was recognized before the statute was passed. Stiles v. Hill, 62 Texas,

431. The liability of the indemnitors to the marshal is upon their bond, but their liability to the persons whose property was seized is that of trespassers.

We understand that all persons who contribute to the commission of a tort through which injury results to another are responsible as principals, and that such persons as induce a wrongful levy to be made by giving to the officer making it an indemnity bond may be treated as trespassers. Lovejoy v. Murray, 3 Wall., 9; Knight v. Nelson, 117 Mass., 458; Screws v. Watson, 48 Ala., 628; Lewis v. Johns, 34 Cal., 629; Herring v. Hoppock, 15 N. Y., 413; Lisher v. Getman, 30 Minn., 327; Brandt on Suretyship, 423; Cool. on Torts, 150; Murfree on Sheriffs, 634.

In Bruce v. Longcope, 44 Texas, 438, it seems to have been held that one who gave indemnity to a sheriff after seizure under execution could not be joined in an action brought against the sheriff and the surety on his official bond, but the opinion seems to be based on the fact that the indemnitor did not contribute to the illegal seizure, and seems to concede that he might have been joined had he done so. The opinion on the point on which it seems to rest may not be in harmony with the great weight of authority.

The property which was seized by the marshal formerly belonged to John La Prelle, who, before the seizure, conveyed it to the Hamilton Brown Shoe Company, and to four persons to whom he was indebted to the amount of $18,862.76, the claims of these parties varying in amounts. One of the persons to whom he was indebted was Reagan Dickson, a minor, and his ward, to whom he was indebted $1677.47; and the property was to be held by those to whom conveyed in shares bearing the same proportion to the entire stock which the sum due to each bore to his entire indebtedness to all, and no one of them took title to any particular part of the goods. The conveyance purports to be "in consideration of the settlement in full of the several debts aforesaid (the amount of indebtedness to each being stated) against me, and of the cancellation and receipt in full of said debts and claims on the part of the several creditors aforesaid." It was "admitted that John La Prelle, at the time he sold out his stock of goods to his wife and others, was guardian for the estate of the minor Reagan Dickson, and was then indebted to him in the sum of $1677.47 for so much of said minor's money used by him theretofore, and that said minor was at Bryan, Texas, going to school at the time of such sale, and was not consulted, and the sale was made to said minor of the goods without his knowledge, and that he, John La Prelle, procured no order of any court authorizing a purchase by said minor and for him of said stock of goods in satisfaction of what John La Prelle owed said minor." There was no evidence tending to show that the minor even knew of the conveyance made to him by his guardian before the goods were seized by the

marshal. The petition showed the proportion in which the several plaintiffs, of whom the minor by his guardian was one, claimed the property seized, and each sought a recovery on that basis. The judgment was for $8817.61, which was divided among the plaintiffs in accordance with their claims, and it is not now contended, except as before noticed, that this judgment is not justified by the evidence as to all the plaintiffs but the minor, as to whom it is claimed no right to any part of the property seized is shown.

Whatever right any of the plaintiffs acquired to the goods rests upon the conveyance made by John La Prelle—rests upon contract—and can it be said that any contract was made between the guardian and his ward?

Apart from the relationship existing between them which would forbid a contract whereby the minor would surrender a just claim against his guardian for property worth less than half of the sum due, there was no agreement between them, without which no contract could exist. If the conveyance had been merely intended as a security for the debt due from the guardian to his ward, the assent of the ward to it might be presumed, but such was not its character; on the contrary, the guardian practically undertook to make a contract with himself whereby the sum due from him to his ward should be satisfied without payment, and this he evidently had no power to do. If there had been an agreement between them, notwithstanding the inability of the ward to bind himself, then the conveyance made to him might possibly be given effect, for the contracts of infants are only voidable, but as there was nothing of the kind at the time the conveyance was made nor subsequently, but before the goods were seized under the process sued out by Davis & Co., it must be held that title to no part of the goods passed to Reagan Dickson; and as there was no intent to convey the part he was intended to secure to the other creditors named in the conveyance, it must be held that so much of the goods remained the property of John La Prelle and was subject to seizure under the writ held by the marshal.

This will lead to a reversal of the judgment, and it will be here rendered in all respects as in the court below, except that it will be adjudged that John La Prelle as guardian of Reagan Dickson take nothing by this action. It is so ordered.

*Reversed and rendered.*

Delivered May 19, 1891.

*Clark, Dyer & Bolinger* argued a motion for rehearing.

*Herring & Kelley,* resisting.

Motion refused.