## NATIONAL SURETY CO. v. ATASCOSA ICE, WATER & LIGHT CO. et al. (No. 6272.)

(Court of Civil Appeals of Texas. San Antonio. Nov. 26, 1919. On Motion for Rehearing, April 28, 1920. On Second Motion for Rehearing, May 19, 1920.)

1. Pleading ⬦149—Bank sued by depositor for deposits misappropriated by cashier may join cashier's surety in cross-action.

In depositor's action against bank for deposits wrongfully abstracted and misappropriated by bank's cashier, it was proper for the bank by cross-action to join surety on cashier's bond and compel it to discharge the loss or damage; the depositor's right to recover against the bank and bank's right to recover over against surety involving the same facts and 'issues.

2. Parties ⬦50—There is misjoinder of parties where no privity exists.

The courts will not allow a party to be brought in when the issue to be joined is on separate contracts in which there is no privity between the parties, and where to sustain the cause requires separate allegations; but where there is such a privity that no harm will result from keeping the parties together, and where no material or substantial change or other unnecessary burden is imposed, the parties will be held properly joined.

3. Parties ⬦25 — Question of misjoinder largely discretionary.

When the plea of misjoinder of parties or question of proper parties is urged, a very large discretion is allowed the courts.

4. Principal and surety ⬦161—Evidence held to sustain finding that cashier willfully misapplied and abstracted bank's moneys.

In depositor's action against bank for deposits alleged to have been misappropriated by

bank's cashier, in which bank asked for judgment over against cashier's surety, evidence *held* to sustain finding that cashier wrongfully abstracted or willfully misapplied bank's moneys.

**5. Principal and surety ⊕=79—Cashier "willfully misapplied or willfully abstracted" bank's money, though it was applied to use of other person.**

Bank's cashier "willfully misapplied or willfully abstracted" bank's funds, within his bond, whether he used all the money for himself personally, or got it and willfully misapplied it in some other way, to the use of some other person.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Willfully Misapply.]

**6. Appeal and error ⊕=724(2)—Court will not search record for errors to aid indistinct assignments.**

While the Court of Civil Appeals is liberal in passing upon all assignments, it cannot search the pleadings, transcript, and statement of facts for supposed errors that are not distinctly disclosed in the assignment itself or propositions thereunder.

**7. Principal and surety ⊕=167—Sureties may be impleaded or come in themselves for determination as to their liabilities.**

Sureties may be impleaded in proper suits, or even come in themselves and have the question of their liability determined and fixed.

**8. Principal and surety ⊕=161—Depositor suing for deposits misappropriated by cashier held not entitled to judgment against cashier's surety impleaded by bank.**

In depositor's action against bank for deposits misappropriated by bank's cashier, in which bank impleaded cashier's surety with prayer for judgment over, depositor was not entitled to a judgment against the surety in absence of showing that bank was insolvent or could not meet its obligations by reason of any of the alleged wrongful acts of such cashier.

### On Motion for Rehearing.

**9. Principal and surety ⊕=159 — Cashier's surety held not liable for payment of draft on bank by cashier.**

Payment of draft on bank by bank's cashier *held* not willful misapplication of the bank's funds within cashier's bond, in absence of affirmative showing that payment was without consent of his superior officers; the presumption being that payment was rightful.

**10. Banks and banking ⊕=138—Bank not liable to depositor for amount charged against depositor's account, where depositor received the benefit.**

In depositor's action against bank for deposits misappropriated by bank's cashier, who, having paid draft on bank, charged amount thereof against depositor's account without depositor's authority, bank could have avoided liability to depositor for such amount by proving that the depositor actually received the benefit of the payment.

Appeal from District Court, Atascosa County; Covey C. Thomas, Judge.

Suit by the Atascosa Ice, Water & Light Company against the Atascosa County State Bank, in which defendant filed answer, making National Surety Company a party and seeking judgment over against it. Judgment for plaintiff against both defendants and for defendant bank over against defendant Surety Company, and the latter appeals. Judgment for plaintiff affirmed as to bank, but reversed as to the Surety Company, and judgment for defendant bank against defendant Surety Company affirmed as reformed.

Black & Smedley, of Austin, for appellant. Arnold & Cozby, of San Antonio, and James A. Waltom, of Jourdanton, for appellees.

COBBS, J. This suit was filed in the district court of Atascosa county, Tex., by the Atascosa Ice, Water & Light Company, originally against only the Atascosa County State Bank, plaintiff seeking to recover from said bank judgment for $7,182 alleged to have been deposited by it with said bank, and payment of which amount had been refused by said bank. The bank filed its answer, making the National Surety Company a party, and seeking judgment over against it for any amount that might be recovered against the bank by the plaintiff. Later the plaintiff amended its petition and made the National Surety Company a party.

Trial before the court, without a jury, resulted in a judgment in favor of the plaintiff, Atascosa Ice, Water & Light Company, against both defendants for the sum of $7,036.30, with 6 per cent. interest thereon from date of said judgment, and in judgment in favor of the defendant Atascosa County State Bank over against the National Surety Company for so much of the judgment in favor of the plaintiff as said bank should have to pay.

The case went to trial on plaintiff's second amended original petition, in which the ice company sued both of the defendants, namely, the bank and the surety company. Plaintiff alleges that it had deposited a large sum of money in said bank, and that of said money the cashier of said bank, to wit, R. L. Witt, wrongfully abstracted and willfully misapplied $7,182 thereof, and the pleadings set up the manner in which said Witt accomplished this, namely, by executing checks and charges, wrongfully and without authority, and by taking the money himself. The petition alleges that said Witt was in complete control of the bank, and took advantage of his position to wrongfully abstract and misappropriate said money. The plaintiff's petition alleges that at the time this occurred, the surety company was bound by a bond or contract of indemnity to

---

⊕=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the extent of $10,000, and this contract of indemnity provided that the surety company would indemnify the bank or any person or persons that may be damaged by the said Witt willfully abstracting or wrongfully misapplying any money during the course of his employment with said bank, and the petition alleges that the said bond was for the benefit, not only of said bank, but also of the plaintiff and all other persons.

The defendant bank answered, and by way of cross-action averred that if in fact it was indebted to the plaintiff, Water & Light Company, in the amount claimed in said pleading, such indebtedness was by reason of the fact that the charges made by the defendant against the plaintiff, mentioned in said Exhibit D, attached to plaintiff's first amended original petition, were not authorized by the plaintiff, but were made by R. L. Witt wrongfully abstracting and willfully misapplying the moneys represented by the charges set forth in said Exhibit D, and that said R. L. Witt was the cashier of the defendant bank and in full charge and control of its business, and that if said charges were not authorized by plaintiff, then said R. L. Witt wrongfully abstracted and willfully misapplied the moneys represented in said charges, and wrongfully charged same to the plaintiff's account, and that, if defendant was liable to the plaintiff on the facts alleged in plaintiff's petition, said liability arose by reason of the acts of R. L. Witt in wrongfully abstracting and willfully misapplying the moneys belonging to the defendant and taking and charging same without authority to the account of plaintiff. Defendant further averred that during said year 1916, and at the time said alleged unauthorized charges were made, said R. L. Witt was under bond issued by the appellant surety company, and that by virtue of said bond the surety company had contracted and agreed that it would hold the appellee bank harmless against and pay to it such pecuniary loss as it may sustain of money or other valuables embezzled, wrongfully abstracted, or willfully misapplied by said R. L. Witt in the course of his employment by the defendant during the period of time that said bond was in full force and effect; and that said bond was in full force and effect upon the dates upon which the various charges referred to in Exhibit D appeared to have been made, and was in full force and effect upon the dates the said R. L. Witt wrongfully abstracted and willfully misapplied so much of the money as is referred to in Exhibit D of plaintiff's said first amended original petition, and the defendant appellee bank further alleged that it had notified the surety company of the claim that had been made upon it by the plaintiff, and that, if it was liable to the plaintiff as claimed in plaintiff's first amended original petition, then in such event the surety company was liable to it in the same amount, because if such liability existed, the same was due to the said R. L. Witt wrongfully abstracting and willfully misapplying the funds of the defendant bank, and wrongfully charging same to the plaintiff without authority. Defendant further averred that R. L. Witt was insolvent, and had departed for parts unknown to defendant, and for that reason was not made a party to the proceeding, and said defendant bank prayed that, in the event any judgment was rendered against it in favor of plaintiff, it might have judgment over against the National Surety Company for the same amount, by reason of the liability existing because of said bond, and for general and special relief.

Thereupon, on October 15, 1918, the surety company filed its plea in abatement and original answer to the cross-action filed in said proceeding against it by the bank. In this answer it set up, in substance, the following: (1) It pleaded in abatement of said cross-action, setting up a misjoinder of causes of action and of parties, as set out in assignments of error relating to the same; (2) a general demurrer; (3) certain special demurrers, raising in main the same issues of misjoinder of parties and of causes of action contained in said plea in abatement; (4) a general denial; (5) it averred a breach of the warranties contained in the application for said bond, the details of which are more fully set forth; (6) that if such bond was issued, it contained a provision with respect to the giving of the notice of loss under the bond, which was breached by the bank. It is not necessary to more fully set forth the substance of the allegations of this pleading.

The exceptions and pleas of all the parties were overruled.

The trial court filed the following:

"Findings of Facts and Conclusions of Law.

"1. The Atascosa County State Bank is indebted to the Atascosa Ice, Water & Light Company in the sum of $6,782, being the aggregate of all of the items set forth in Exhibit D of plaintiff's second amended original petition, except the item of $350 under date of March 25, 1916.

"2. The said sum of $6,782, which is owing to plaintiff by the Atascosa County State Bank, is owing by virtue of the fact that the plaintiff deposited with the Atascosa County State Bank $6,782 more money than the Atascosa County State Bank is willing to return to the plaintiff.

"3. During the year 1916, R. L. Witt wrongfully abstracted and willfully misapplied money to the extent of $6,782. The dates and the amounts of such money so willfully abstracted and wrongfully misapplied by R. L. Witt are those dates and amounts set forth in Exhibit D to plaintiff's second amended original petition, aggregating $6,782, and consisting of all of the items set forth in Exhibit D except the item of $350, under date of March 25, 1916.

"4. Said money so wrongfully abstracted and

willfully misapplied by the said R. L. Witt was the money of the Atascosa County State Bank, and particularly that part of the money of the Atascosa County State Bank represented by the deposits of plaintiff, and the said money so wrongfully abstracted and willfully misapplied was charged by the said R. L. Witt to the account of the plaintiff, and the said R. L. Witt, in the carrying out of his designs to wrongfully abstract and willfully misapply said money, wrongfully and without authority executed and caused to be executed and paid, and caused to be paid out of the funds of said bank, and charged and caused to be charged against the deposits of the plaintiff, the checks and drafts and charges set forth in Exhibit D of plaintiff's second amended original petition, with the exception of the charge of $350 under date of March 25, 1916.

"5. The said R. L. Witt, at the time he so wrongfully abstracted and willfully misapplied said money and executed and caused to be executed said checks and drafts, and charged and caused same to be charged to the account of the plaintiff, was an employé and officer of the Atascosa County State Bank, in control and management of the business of said bank.

"6. At the time said money was so wrongfully abstracted and willfully misapplied there was in existence a valid bond constituting a contract of indemnity in the sum of $10,000, executed by the National Surety Company, and being the instrument introduced in evidence by the plaintiff, binding the National Surety Company to indemnify the bank, or any person or persons who may be damaged by the said R. L. Witt wrongfully abstracting or willfully misapplying any money in the course of his employment in said bank.

"7. By virtue of the wrongful abstracting and willful misapplication of the said money by the said Witt, and the execution of the said checks and drafts by the said Witt, and the wrongful charging of same to the accounts of the plaintiff by the said Witt, as hereinabove set forth, which was done in the course of the employment of said Witt in said bank, it has resulted in damages to the Atascosa County State Bank and to the plaintiff.

"8. The Atascosa County State Bank has not breached any of the terms or provisions of the contract of indemnity, and notified the National Surety Company of the claims made against it by the plaintiff as soon as knowledge of such claim was communicated by plaintiff to the Atascosa County State Bank, and notified the National Surety Company of the said wrongful abstracting and willful misapplication of said funds by the said R. L. Witt as soon as knowledge thereof was obtained by the Atascosa County State Bank.

## "Conclusions of Law.

"1. I conclude that the plaintiff is entitled to a judgment against the Atascosa County State Bank, and against the National Surety Company.

"2. I conclude that the loss represented by the judgment in this case is a loss covered by the contract of indemnity of the National Surety Company, and such loss should fall primarily on the National Surety Company, and secondarily on the Atascosa County State Bank;

and that judgment should be rendered in favor of the plaintiff, against both defendants, with the provisions that the plaintiff should exhaust its remedy against the National Surety Company before seeking to collect the judgment against the bank.

"3. The Atascosa County State Bank is entitled to a judgment against the National Surety Company to indemnify and protect the Atascosa County State Bank from any loss by virtue of the wrongful abstraction and willful misapplication of the money by R. L. Witt."

The bank neither appeals nor files any brief.

The first six assignments practically raise the same questions on the several rulings of the court, to the effect "that the cause of action of the plaintiff against the bank and the alleged cause of action of the bank against this defendant are distinct and severable causes of action, the cause of this action alleged by plaintiff being simply a suit by a depositor against a bank to recover the amount of his deposit, while it appears that the suit of the bank against this defendant is based upon a bond, whereby this defendant is alleged to have guaranteed the bank against pecuniary loss of money or property embezzled, wrongfully abstracted, or willfully misappropriated by one of its officers, R. L. Witt, in the course of his employment, and because these are two distinct and separate causes of action, and cannot be properly joined in this suit, existed between different parties, provable by different facts, and because it further appear that there is no privity or community of liability between the defendants and the plaintiff."

[1] It is the contention of the appellee, being a creditor of the bank, that it was interested in the indemnity contract executed by the surety company, which not only bound itself to indemnify the bank, but also all others who sustained loss by the wrongful acts of Witt. Appellee claims the right to join in this action in its own behalf directly against both for the reasons stated. The right of appellee to recover against the bank and the bank's right to recover of appellant involves no additional facts or different issues, and it was proper for the bank to join appellant by cross-action, and to compel it to discharge the loss or damage. Farmers' Nat. Bank v. Merchants' Bank, 136 S. W. 1122; Skipwith v. Hurst, 94 Tex. 322, 60 S. W. 423; Harless v. Haile, 174 S. W. 1023; Kunz v. Ragsdale, 200 S. W. 269; Garrison v. Bowman, 183 S. W. 72; Kerbow v. Wooldridge, 184 S. W. 754; Phila. Underwriters v. Ft. Worth & D. C. Ry. Co., 31 Tex. Civ. App. 104, 71 S. W. 419; Railway v. Grimes, 196 S. W. 693; O'Brien v. Gilliland, 79 Tex. 602, 15 S. W. 681; Paul v. Sweeney, 188 S. W. 527; Adams v. First Nat. Bank, 178 S. W. 996. And it has been held that suits on contracts and on torts growing out of precisely the same transaction, or so intimately con-

nected as to require same proof to establish the complained of wrong, may, within the discretion of the court, be joined where no injury can be shown. Kerbow v. Wooldridge, 184 S. W. 747; Paul v. Sweeney, 188 S. W. 527; Holloway v. Blum, 60 Tex. 628.

[2] Of course, as contended by appellant, the courts will not allow a party to be brought in when the issue to be joined is on separate contracts in which there is no privity between the parties, and where to sustain the cause requires separate allegations, proofs, and issues. U. S. F. & Guaranty Co. v. Fosatti, 97 Tex. 497, 80 S. W. 74; Keel & Son v. Gribble-Carter Grain Co. et al., 143 S. W. 239; Young v. State Bank of Marshall, 54 Tex. Civ. App. 206, 117 S. W. 476; Zau v. Clark, 53 Tex. Civ. App. 525, 117 S. W. 893; Coutlett v. U. S. Mortg. Co., 60 S. W. 817.

[3] In questions of practice when the plea of misjoinder of parties, or question of proper parties, is urged, a very large discretion is allowed the courts. We do not mean that such discretion is always allowed in any case, for there must be such a relation or privity that no harm will result from keeping the parties in court together for its ultimate determination, who will be affected by the judgment. When it is apparent no material or substantial change in the proof, or other unnecessary burden is imposed by it in the development of the issues necessary in the case, they will be held properly joined. In a sense, however, the question of parties is largely dependent upon its own peculiar facts and issues.

The surety company is bound to the bank to indemnify it against just such acts as those committed by Witt. The same facts that the bank was required to establish in order to recover against the surety company were established against it by appellee. To sustain the exceptions against the prayer of appellee would not, in the least, change the question of the surety company's liability under its indemnity. It would still be the bank's surety, to indemnify against this very loss and judgment.

To dismiss it from this suit would mean that the bank would be required to pay the judgment, and then institute another suit upon the same bond and recover upon precisely the same state of facts. This would be carrying the doctrine of misjoinder quite to the limit. It would be requiring a useless thing to be done, and this the courts will not do. In fact the presence of all the parties here was very proper in order to establish the facts in the case to fix the liability of the bank to appellee, and the presence of appellant to establish its liability to the bank predicated upon the same facts which alone fixed the liability. It is not a new question, and the case of U. S. F. & Guaranty Co. v. Fosatti, 97 Tex. 497, 80 S. W. 74, goes into a very full discussion of the subject of misjoinder. That case appellant seems largely to rely upon. The question presented in the Supreme Court was upon two certified questions: The first, to ascertain whether or not the record presented such a controversy between the parties as made it a removable cause to the federal court; the second was as to misjoinder of parties, and its answer rendered an answer to first unnecessary. That case does not in any way change the rule of law that a defendant may, in a proper case, bring in its surety, but in effect reaffirms that doctrine in the discussion of the case. In the Fosatti Case, different issues and different questions arose, which would require different proof. In that case the tax collector was not charged with dishonesty, and the bond indemnifying against loss by "any act of fraud or dishonesty amounting to larceny or embezzlement" is an issue in character different from the state's suit, for the loss might result from the loss of the money in many ways without dishonesty. Here the indemnity is different, and is made directly for the bank's benefit, and the liability of the surety company resulted as a matter of law from the establishment of the bank's demand by the production of the written indemnity.

Bear in mind also, in the Fosatti Case, the court is separating in the most technical way to determine whether there are severable controversies that could be tried separately to determine the removability of the case to the federal court.

The seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, and sixteenth assignments raise practically the same questions, and challenge the court's findings that there was evidence to support the recovery to the effect that Witt wrongfully abstracted or willfully misapplied moneys belonging to the bank, because it claims no loss was suffered by the bank, claiming the evidence showed the checks were executed and charged to the water company's account, and no evidence that Witt received the money and willfully misapplied or willfully abstracted same, within the meaning of the bond.

[4] On all these issues the court has found the facts against appellant, and such finding in our judgment is fully sustained by the evidence.

The bond, among other provisions, is as follows:

"* * * For the use and benefit of the bank or any person or persons who may be damaged by breach of the conditions herein set forth."

And the conditions of the above obligation are as follows:

"That, whereas, the said officer is in the service of the bank in the city of Jourdanton, county of Atascosa, Texas, holding the position of

cashier: Now, if the above-bounden officer shall well and faithfully perform all the duties of his office or employment and if the company shall hold the bank harmless against, and pay to it such pecuniary loss as it may sustain of money or other valuable securities embezzled, wrongfully abstracted or willfully misapplied by said officer in the course of his employment as such and in the course of his employment in any other position in the bank to which he may be appointed, reappointed, elected or re-elected or temporarily assigned, then this obligation is void; otherwise to be and remain in force and effect. * * * "

It is further recited in said bond:

" * * * It being the true intent and meaning of this bond that the company shall be responsible for any loss occasioned by or resulting from any act, as aforesaid, occurring within the period specified in this bond."

R. L. Witt was the chief officer of the bank and in full charge. It has only a bookkeeper, and the cashier, Witt, was bookkeeper and cashier, and managed and controlled all its affairs. The checks and false entries which constitute Witt's embezzlement were made from time to time by him and in his handwriting. They could not have been made by any other. He occupied there a most exalted position, and one of high honor and trust, affording excellent opportunity for his peccancy. Besides being the chief man in the bank, he was the main stockholder in appellee's company, whose moneys were deposited in this bank in his charge, so to speak. He drew checks against the bank at will without authority and for his own use and benefit, and charged many against appellee's account on the bank without authority, and manipulated the accounts so as to represent legitimate charges against appellee to deceive and mislead the officers who examined the bank's accounts from time to time. Appellee had large deposits in the bank, some of which funds Witt abstracted by checks drawn by himself without authority. Witt was speculating and in need of money. He drew something like $11,000 out of the bank as dividends to pay stockholders of appellee, presumably to get some money for himself, and to conceal the facts from the stockholders credited them on obligations they owed the bank, so they would not receive immediate knowledge of his unlawful acts. When Daughtrey, for the ice company, protested and told him he had no authority, he excused himself by saying he needed the money. A number of instances are shown wherein Witt drew his check against the bank, which was paid by the bank and charged by Witt to appellee. D. B. Daughtrey was secretary and treasurer of appellee company, was the custodian of its funds deposited with the bank. At the time these sums were being drawn out, the ice company was not doing any business, had left its money on deposit. While it was active in its business, Witt promptly furnished statements from the bank. Mr. Daughtrey testified as follows:

"The bunch of statements already introduced in evidence started about the 1st of March; I think I got them pretty regularly up to that time, but I did not get any after that time. I asked for the statements, but they did not give them to me. I asked Witt for the statements, and he said that he did not have them ready. I got after him about it 30 or 40 times. That was along in March. I tried to get the statements, but did not get them until about the fall of 1917. I went down to the bank, and inquired how much money we had in the bank. The statement as to the amount of money we had in the bank would not tally out with my book, and that is the reason I wanted the statements. It is hard to tell how much money we ordinarily kept on deposit, as it was more at times than at others, and I can't remember."

These acts go to show his concealment, and finally he absconded; was indicted in Frio county on various charges growing out of these transactions. He was bonded "to faithfully perform all the duties of his office or employment, * * * hold the bank harmless against, and pay to it such pecuniary loss as it may sustain of money . * * * wrongfully abstracted or willfully misapplied," etc., and, further "shall be responsible for any loss occasioned by or resulting from any act as aforesaid." A case was made out against him, he did not perform his duties, did cause the bank pecuniary loss, wrongfully abstracted money, and misapplied money in the bank of its depositors, which direct loss was "occasioned by" his "acts." This is not a case where the bond simply provides to pay off any judgment that might be recovered, but the terms are such as to require it to discharge the loss as soon as discovered.

The remaining assignments that raise questions as to the errors claimed in the findings of the court, that there was no evidence that the bank lost the money represented by the checks, or that Witt received the money and willfully misapplied or willfully abstracted it, within the meaning of the bond, have really been discussed in the foregoing.

[5] The findings of the court were sustained by the evidence which showed Witt did not perform his duty, but by his own conduct caused the pecuniary loss to this bank, and by wrongful means and methods adopted by him willfully misapplied the funds of the bank which caused its loss. Under the terms of that bond, it makes no difference whether he used all the money for himself personally, or got it and willfully misapplied it in some other way to the use of some other person, it would be "willfully misapplied or willfully abstracted within the meaning of the bond" in obtaining it in the manner he did.

The eighteenth assignment challenges the item of $1,300 included in the judgment evidenced by draft drawn by Carlos Bee against the bank and charged against the account of appellee by Witt. The evidence showed that the draft was drawn by Carlos Bee, dated at San Antonio, Tex., June 2, 1916, and is payable to the order of the State National Bank, in the sum of $1,300, drawn on the "Atascosa County State Bank, Jourdanton, Texas." Across the face of the draft appears the following: "Ch. to Waterworks a/c"—and the draft was indorsed on the back by Carlos Bee as well as the State National Bank of San Antonio. The draft did not bear any indorsement or stamp showing that it had ever been paid by the Atascosa County State Bank. It was not drawn on the Atascosa Ice, Water & Light Company, but was drawn on the bank itself. It purports on its face, therefore, to be an obligation of the bank, at least when accepted and paid by the bank. Mr. Daughtrey also testified as follows, with respect to this item:

"It is true that we had made a conditional sale of the property of the Waterworks Company to parties in San Antonio."

Being asked if it was not a further fact that the party in San Antonio had paid $2,000 on that conditional trade, witness said he heard it was a fact, but did not know it of his own knowledge.

"I do not know that it is a fact that Carlos Bee, who represented that party, accepted $1,300 of that money as compromise, rather than a suit, although I heard of such a transaction, and our company was connected with it. It seems that Witt made a kind of sale of the waterworks .unauthorized by the directors. What I mean by that is he accepted $2,000 as bonus for the sale of the plant. Made a trade to buy out the plant, by which he paid $2,000 down. If we accepted the trade, that money was to go to all of us, and we accepted it. I do not know why Carlos Bee was drawing that fee of $1,300; never heard anything about it, had no communication with Mr. Bee about it. The company had no communication with Mr. Bee about it that I know of. Don't know whether the company did or not. I do not testify as a matter of fact that the company did not agree to pay him $1,300 compromise, and the return of that bond."

Mr. Daughtrey also testified:

"On the draft of Carlos Bee is a notation in pencil reading: 'Charge to waterworks account.' That is written across the face of the check in Witt's handwriting. I didn't authorize anybody to charge that to the waterworks account."

This is all the evidence, of every character, referring to this $1,300 draft, which was included in the court's judgment.

Defendant presented to the trial court a special request for additional findings of fact with respect to this $1,300 item, and asked the court to find that there was no evidence showing that this draft was actually paid by the Atascosa County State Bank, and that there was no evidence that said bank lost or paid out any sum of money on account of said draft, or was there any evidence showing who, if any one, received the amount of money represented by said draft, but this request was refused by the court, to which defendant excepted.

Whether this was a proper charge against the bank or against the ice company is not material to consider, as Witt who handled the affairs of the bank was so connected and identified with the transactions. as to know the bank did not owe it, and knew that it was a transaction in which he was engaged in attempting to sell the ice plant. It was his clear duty, either to have turned down this draft or have called on the ice company to pay it. When he made the indorsement, "Charge to the waterworks account," it was as though he had checked out that sum, as in the other cases, and the presumption arises by the possession of the Bee draft that he caused the bank to pay it, took the bank's money knowingly, willfully, and unlawfully, and paid this draft with it when he knew the bank did not owe it, and caused that loss in such way as to come within the terms of that bond. The bond stood for the use and benefit of any one damaged by the breach for the amount of any balance found due, and promised to pay any pecuniary loss of money, wrongfully abstracted or willfully misapplied by said officer in the course of his employment, it being responsible "for any loss occasioned by or resulting from any act, as aforesaid, occurring within the period specified in this bond." It was conceded, so far as Bee is concerned, his acts were entirely proper, and there is enough to show he had a claim against some of the parties, and some one evidently authorized him to draw, presumably Witt, and there is no issue here for us to determine in that respect. There is no proof or intimation that the bank owed it.

In the twentieth assignment appellants challenge the ruling of the court in including in the judgment the item included in a check for $3,000, dated March 25, 1916, payable to the order of R. L. Witt upon the ground there was no evidence showing the bank ever paid it. The check is as follows:

"Jourdanton, Texas, 3/25, 1916.  No. ———.

"Atascosa County State Bank

"Pay to the order of R. L. Witt a/c $3,000.00 three thousand dollars.

2,215  L. H. Ernst          Atas. I. W. & Light Co.
 785   R. L. Witt                  ,
_____
3,000.00"

The check was payable to the order of R. L. Witt, and bore no indorsement, and was not stamped "Paid." With respect to this check, Mr. Daughtrey testified:

"Regarding the check for $3,000 dated March 25, 1916, payable to R. L. Witt, apparently signed by the Atascosa Ice, Water & Light Company, will say that I didn't execute this check, and did not authorize any one to execute it. The check is in the handwriting of Witt."

He also testified that he was familiar with Witt's handwriting, and that he did not know of any one that had authorized the execution of the check, and had never been present at any meeting of the board of directors that authorized its execution. Again, he testified with respect to this check:

"As to whether the check for $3,000 payable to the order of R. L. Witt has ever been stamped 'Paid' by anybody, will say I don't see any stamp on it. That check came in with my statement. Our checks are usually stamped 'Paid' when they are paid, and this one, so far as it shows on its face, has never been paid at all."

Daughtrey further testified:

"Regarding the check for $3,000 dated March 25, 1916, payable to R. L. Witt, apparently signed by the Atascosa Ice, Water & Light Company, would say that I did not execute that check, and did not authorize any one to execute it. The check is in the handwriting of Witt. I have seen Witt's handwriting from time to time, and am familiar with his signature, and recognize that as being Witt's handwriting on that check. I do not know of any one who ever authorized the execution of that check, and I was never present at any meeting of the directors that authorized its execution."

It is contended that the check was forged by Witt, as he was not authorized to draw checks in name of appellee. The entire instrument, signature, and marginal memoranda, shows presumably its disposition in paying $2,215.00 to L. H. Ernst and retaining $785 for himself.

"This check was forged by Mr. Witt, and was charged to the account of the ice company by Mr. Witt, and the bank's books show that it was paid out by the bank and charged to the ice company, as is shown by the bank's statement to the ice company, and this particular check was attached to the ice company's statement, as is shown in Daughtrey's testimony. * * * The check was payable to Mr. Witt and cashed by him because it was charged against the account of the ice company on the books of the bank, and therefore by this transaction the money belonging to the ice company to the extent of $3,000 passed into the control of Mr. Witt, and to represent which he charged the ice company with this check, and attached this check to the ice company's statement."

What Mr. Witt did with this money is not shown, except the possible inference that might be gained by looking at the notation on the corner of the check. It is immaterial what he did with the money. The fact remains that the money was paid by him and charged to the ice company's account by reason of this forged instrument. From these facts, in view of the other facts which we have set forth above, the court was well warranted in concluding that this $3,000 item "constituted a wrongful abstracting and misapplying of that much money belonging to the bank, and particularly that part of the bank's funds which represented the deposit of the ice company."

All the assignments challenging the rulings of the court in respect to the items paid out of the bank by Witt, going to make up the court's judgment, claiming it was without evidence to support it, involve practically the same facts and issues already discussed, and all may be disposed of together.

Mr. Daughtrey testified Witt was not authorized to charge against the Atascosa Light & Water Company any of the items, and never received any benefits from these expenditures. The item of $832 was a check, payable to cash, in Witt's handwriting and cashed by the bank; the check of $100, also in Witt's handwriting, payable to Witt, October 19, 1916, cashed by the bank; check, $50, also in Witt's handwriting, payable to Witt, dated April 25, 1916, cashed by the bank, and the item of $150 was to pay one of his personal debts. All these items were charged by Witt against appellee, and rendered to it in a statement afterwards, showing them charged against its account.

The twenty-first assignment is challenging the ruling that R. L. Witt did not have authority, express or implied, to sign these checks. It is overruled because it is satisfactorily shown he had no such authority. He was not an officer in the ice company, had no authority to bind that company, and there is no such act done, knowledge acquired, or benefits received by that company, from which any waiver is shown or inference of authority may be drawn or indulged in to estop it, but per contra.

[6] The twenty-second assignment claims the court erred in holding the bank had not breached the terms and provisions of the contract of indemnity. Neither the assignment nor the propositions thereunder point out in what particular the breach arises, and we cannot speculate as to what they are. At any rate the court found from the evidence there was no breach of the obligations of the bank, and we see no reason to disturb that finding. While this court is liberal in passing upon all assignments, it cannot search the pleadings, transcript, and statement of facts for supposed errors that are not distinctly disclosed in the assignment itself or propositions thereunder. However, from a careful examination of the

assignments and the testimony, we believe the court is sustained in all the findings of facts.

[7] We will now return to a consideration of the seventeenth assignment, which we passed for a discussion of the other assignments germane to each other. Sureties, as seen, may be impleaded in proper suits, or even come in themselves and have the question of their liability determined and fixed. Illies v. Fitzgerald, 11 Tex. 417; U. S. Guaranty Co. v. Fosatti, 97 Tex. 497, 80 S. W. 74; Cabell v. Hamilton Shoe Co., 81 Tex. 104, 16 S. W. 811; Stevens v. Wolf, 77 Tex. 215, 14 S. W. 29; Railway v. Yale, 27 Tex. Civ. App. 10, 65 S. W. 57 (affirmed 95 Tex. 683, 66 S. W. xvi).

[8] While we are of the opinion there was no error in permitting the joinder of the cause of action asserted by the bank in its cross-action against the surety company, at least there was no abuse of discretion, as no possible harm could result therefrom, yet we do not believe the appellee the waterworks company alleged or proved a cause of action against the appellant, the surety company, entitling it to hold appellant in this suit for any recovery against it, for it is not alleged, claimed, or shown that the bank is insolvent and rendered unable to respond and pay its said obligation by reason of any of the alleged wrongful acts of Witt resulting in the insolvency of and inability of the bank to pay its said obligation.

The misapplication or abstraction of the money of the bank would not affect appellee's right to recover from the bank unless, as stated, it rendered the bank unable to pay. In such case it might be held that the acts of Witt caused loss to the depositor; but here, as stated, there is no pleading or evidence to that effect. Therefore this assignment is sustained.

The judgment in favor of the waterwork's company, appellee, against the surety company, appellant, is reversed, and judgment rendered, dismissing the suit of the waterworks company against the surety company. In all other respects the judgment is affirmed.

Reversed and rendered in part and affirmed in part.

## On Motion for Rehearing.

[9] We are not satisfied with our ruling in respect to the item of $1,300 discussed by us, presented in the eighteenth assignment. The bank offered no evidence that it did not owe it. Witt was in charge of the affairs of the bank, daily paying out money drawn against it in the regular course of its business, and, so paying out the funds of the bank, the fact of paying this check for $1,300, drawn against the bank, carries with it no particular significance, more than if he had paid it to any other customer of the bank on a similar check or draft. It is not the fact that the bank paid this check that is important at all, but rather the character of its payment. Witt was paying them all, daily, as presented in the ordinary course of business. He was in charge of its affairs. No one, therefore, can contend under the circumstances such a payment of a check drawn on the bank constituted of itself a wrongful abstraction or willful misapplication of its funds. It requires more proof than that. It must be shown affirmatively the payment was wrongful under such circumstances as to constitute willful misapplication of the bank's funds.

[10] None of the directors of the bank explained it; none contended that the payment was wrongful. The drawer of the draft, Mr. Bee, did not testify. It does not look as though the case had been fully developed on the point. It may be that the board of directors, with full knowledge of all the facts, consented to the payment. We cannot speculate on the matter, as the record is utterly silent as to whether the payment was rightful or wrongful, but in the absence of sufficient proof on the subject it must be assumed rightful, because the burden of proof was on the bank to show it was wrongfully paid out. The plaintiff company made out a case against the bank for the recovery of said item of $1,300 by showing that a draft on the bank was charged to its account without its authority. The bank might have avoided the effect of such proof by showing, if it could, that the plaintiff company actually got the benefit of the payment of $1,300 made by the bank, but we do not find the evidence to be sufficient to establish such to be the fact, nor has the bank appealed and complained of a failure to so find. In order, however, for the bank to recover against the surety company, it must show that the payment of the draft was not authorized by the directors, and the fact that it was charged without authority to plaintiff company raises no inference that the payment of the draft was unauthorized. Witt did not get the money, and, to show that he breached the conditions of his bond as to this item, it is necessary for the bank to affirmatively show that Witt paid the draft without the consent of his superior officers in the bank.

As the plaintiff stated no cause of action against the surety company, it is evident that error committed in trying the cause of action alleged by the bank against the surety company cannot affect the judgment in favor of the plaintiff against the bank. The judgment formerly entered by us will therefore only be changed to the extent that the judgment affirming the recovery of the bank against the surety company will be set aside, and the judgment of the trial court in favor

of the bank against the surety company will be reversed, and the cause, as between said two parties, remanded for another trial.

### On Second Motion for Rehearing.

The Atascosa County State Bank, filing its motion for rehearing, says, while it contends the facts are sufficient to justify the conclusion that the item of $1,300 should be recovered from the surety company, in case this motion is not granted, it does "hereby remit and tender a remittitur of $1,300 of the judgment rendered in its favor by the trial court against the National Surety Company, and does respectfully pray that such remittitur be allowed and accepted, and by virtue thereof the judgment of the trial court in favor of the bank against the surety company be reformed and rendered, and judgment to stand for the amount allowed the bank against the surety company by the trial court, less said item of $1,300."

The motion for rehearing is overruled, but, pursuant to the offer to remit in case such motion is overruled, our judgment reversing the judgment obtained by the bank against the surety company is set aside, and judgment entered reforming the trial court's judgment against the surety company by reducing the same from $7,036.30 to $5,736.30, and, as thus reformed, such judgment will be affirmed.