## MINE & SMELTER SUPPLY CO. v. DUN-BAR et al.

### No. 3147.

Court of Civil Appeals of Texas. El Paso. Dec. 20, 1934.

Rehearing Denied Jan. 3, 1935.

R. A. D. Morton and H. D. Stringer, both of El Paso, for appellant.

Harrison, Scott & Rasberry, of El Paso, for appellees L. J. Reynolds and Reynolds Co.

Paul D. Thomas and William Flournoy, both of El Paso, for appellee Dunbar.

PELPHREY, Chief Justice.

Prior to August 15, 1931, L. J. Reynolds was doing business in El Paso, Tex., under the trade-name of Reynolds Electric Company. During the same time A. W. Dunbar was conducting a dairy in the valley south of El Paso. Reynolds did some electrical work for Dunbar amounting to more than $500. After part of the account had been paid, Dunbar, at the request of Reynolds, executed a note in the sum of $326.25 payable to Reynolds Electric Company. The note was dated August 15, 1931, and was payable twelve months after date. The note theretofore executed by Dunbar was, during August, 1931, delivered to appellant, under an agreement the terms of which are disputed. Appellant claims that the note, together with others, was indorsed and turned over to them by Reynolds as collateral. Reynolds' version of the understanding is that appellant was to take the notes (the note in question included) and check them to ascertain their value, and, if they were found to have a value, to give him credit for such value and, if not, to return them to him.

During the following January, Reynolds filed a voluntary petition in bankruptcy in the federal court for the Western District of Texas.

On January 29, 1932, appellant filed a claim in the bankruptcy court for $9,301.58. The claim recited that there were no offsets or counterclaims and that appellant had not received any manner of security for its debt.

July 19, 1932, appellant filed an amended claim for $8,862.68, in which appears the recital that the amount of $438.90 had been pledged as collateral and that such amount, had been deducted from the full amount due.

On April 7, 1932, the trustee was authorized to sell the assets of the bankrupt estate to R. E. McKee for the sum of $1,250; which he did by bill of sale, in which the property conveyed was described as: "All of the remaining assets now belonging to the bankrupt estate consisting of the remaining stock in trade formerly belonging to the said Bankrupt and now located on the premises at 708 N. Stanton street, El Paso, El Paso County, Texas, together with the accounts receivable."

McKee later transferred the property to appellee Reynolds Electrical & Engineering Company, a corporation, for the sum of $2,500.

Appellant filed this suit on October 18, 1933, against Dunbar seeking to recover the principal of the note executed by him to Reynolds Electric Company together with interest and attorney's fees.

Dunbar answered admitting the execution of the note but denying the possession of any

right in it by appellant. He further alleged that the note was delivered to appellant with the agreement to investigate its value and give credit therefor as claimed by Reynolds and above recited. That appellant, after investigation, refused to credit the note on Reynolds' account and instructed him to call and get the note; that pending his calling for the note there was a change in the officials of appellant and the new officials refused to deliver the note to him.

As an alternative pleading he alleged that if there was any transfer of the note made to appellant, it was merely a pledge made to secure the debt of L. J. Reynolds, and that thereafter appellant, through its agent, waived and rescinded said pledge, although it did not return the note to Reynolds. He further alleged that appellant knew that he was delivering milk to Reynolds for credit on the note and authorized and permitted Reynolds to accept the milk and agreed with Reynolds that he (Dunbar) should be given credit on the note for the milk furnished by him as shown by the statement made a part of his pleading.

By way of cross-action he alleged that Reynolds Electric & Engineering Company and Reynolds were claiming to be the owners of the note also; that he had been delivering milk to Reynolds under the claim that Reynolds Electric & Engineering Company was the owner of the note and that he would be given credit thereon for all milk delivered to Reynolds. He further alleged that if Reynolds or Reynolds Electric & Engineering Company were not the owners of the note, then he was entitled to recover of Reynolds the value of the milk delivered to him, and that if Reynolds Electric & Engineering Company was found to be the owner of the note, he was entitled to a credit thereon for the milk furnished to Reynolds. He prayed for judgment against Reynolds for the milk in case it was found that appellant was entitled to recover against him on the note, and that if the ownership of the note was found to be in either Reynolds or Reynolds Electric & Engineering Company that he be given credit for the milk thereon.

Reynolds and Reynolds Electric & Engineering Company answered by a general demurrer, a general denial, and then set out the execution of the note by Dunbar; the delivery thereof to appellant; the agreement to investigate the notes for value; the refusal on the part of the officials of appellant to credit them on the account of Reynolds; and the later refusal of the newly appointed officials of appellant to deliver the notes to Reynolds.

They further alleged the filing of the petition in bankruptcy by Reynolds, the appointment of a trustee, the listing of the Dunbar note as part of the assets of the bankrupt, the closing of the bankrupt estate, the filing of the claim by appellant in the bankrupt court wherein the statement was made that no security had been given for the debt, the sale of the assets of the bankrupt estate to McKee, and the later sale by McKee to Reynolds Electric & Engineering Company.

Upon these facts they then asserted the ownership to have remained in Reynolds until the date upon which he was adjudged a bankrupt; that upon that date the legal title vested in the trustee; that such title passed in the sale by the trustee to McKee and thereafter to Reynolds Electric & Engineering Company. As an alternative pleading, they alleged that the notes were delivered to appellant as collateral security for the debt owed by Reynolds; that later appellant's agents disclaimed all right thereto and agreed to surrender them to Reynolds if he would come for them; that after Reynolds was so advised by appellant's agent, he told said agent of his agreement with Dunbar to allow him credit on the note for milk delivered, to which arrangement appellant's agent agreed for the reason that appellant did not want the notes; and that as a result of such disclaimer on the part of appellant's agents, he (Reynolds) re-acquired absolute ownership of the notes free and clear of any claim or interest on the part of appellant.

By way of cross-action Reynolds Electric & Engineering Company adopted the above allegations and asked for judgment against appellant for title and possession of the note in question.

In a trial amendment, appellant alleged the delivery to it of the note before maturity; that it had continuously held possession thereof since the date of its delivery; that Reynolds listed said note as part of the assets of the bankrupt estate, but in so doing made the explanation that it was held and claimed by appellant; that the trustee made repeated demands upon appellant for delivery of the note; that he finally caused appellant to be notified to appear before the referee in bankruptcy to show cause why said note should not be surrendered to the trustee; that upon a hearing before the referee a finding was made that appellant was the owner of the note; that appellant, under the direction of the referee, filed an amended claim in which

credit was allowed for the note and the others held by appellant; and that such finding was an adjudication of the ownership of the note which, not having been reversed, became final as to all parties on that question.

In response to special issues the jury found that the note was not delivered to appellant under an agreement that it was to be held as collateral; that it was delivered under an understanding that appellant would investigate, and, if satisfied as to its value, would credit same to the account of Reynolds; that appellant notified Reynolds that it would not accept the note as a credit on his account; and that it was not determined during the bankruptcy proceedings that the ownership of the note was in appellant.

Judgment was rendered denying appellant any recovery on the note, denying Dunbar any recovery against Reynolds or Reynolds Electric & Engineering Company, and decreeing the title of the note to be in Reynolds Electric & Engineering Company and ordering its delivery by appellant.

This appeal is from that judgment.

### Opinion.

■ Appellant, in reply to the cross-action of Dunbar, prayed that it be abated for the reason that it involved various and sundry matters not connected with the execution of the note and which constituted no defense to appellant's suit and injected issues into the suit which were foreign to any issue made by appellant's suit or by Dunbar's answer. This plea was overruled by the court, and such action is here presented as appellant's third point of error.

Appellant's position is, we think, untenable.

Appellant sued Dunbar on the note which he had executed to Reynolds Electric Company and in payment of which he had been delivering milk to Reynolds. His pleading was to the effect that appellant was not, and never had been, the owner of the note; that it was claimed by and was the property of either Reynolds or the Reynolds Electric & Engineering Company.

Reynolds and Reynolds Electric & Engineering Company, in their answer to Dunbar's cross-action and in what they term a cross-action against appellant, alleged the ownership of the note to be in Reynolds Electric & Engineering Company and not in appellant.

It thus appears that one of the controlling issues raised in this suit was that of the ownership of the note. With these facts before us we see no error in joining Reynolds and Reynolds Electric & Engineering Company in

the suit. Seabrook v. First National Bank (Tex. Civ. App.) 192 S. W. 314; National Surety Co. v. Atascosa Ice Co. (Tex. Civ. App.) 222 S. W. 597.

Furthermore, it seems that the question is one largely in the direction of the trial court. The point is overruled.

Appellant's first point of error is that it was entitled to a peremptory instruction because the evidence showed that the referee had allowed its amended claim in which it had given credit on its claim for the note in question. Appellant takes the position that such allowance by the referee constituted a final judgment to the effect that appellant was entitled to the note and became res judicata of the question of ownership thereof.

It appears from the record that a subpoena duces tecum was issued July 8, 1932, commanding Fred H. Evers, credit manager of appellant, to appear before the referee and to bring with him all promissory notes turned over to appellant by Reynolds as collateral to or in support of, or in connection with, the indebtedness claimed by appellant; that a hearing (which the referee calls informal) was held on July 11, 1932; that the referee told appellant's agent that he thought appellant should either credit the notes on its account or turn the notes over to the trustee; that acting upon that statement appellant filed its amended claim which was approved; that theretofore, on April 7, 1932, the trustee had executed a bill of sale to McKee covering the assets of the estate; and that on May 2, 1932, following, McKee had transferred such assets to Reynolds Electric & Engineering Company.

■ Neither McKee nor the Reynolds Electric & Engineering Company being before the referee or having been cited to appear at the hearing held on July 11, 1932, it cannot be said that any adjudication of the ownership of the note would be res judicata as to them, and especially would this be true where the note, if it was a part of the assets of the estate, had passed out of the hands of the trustee at the time the hearing was had.

The referee testified that there was no order to show cause issued and no order entered adjudicating the title to the notes. It thus appears that there being no issues joined by pleadings filed and no order issued by the referee, there is considerable doubt as to the proceeding being such as to form a basis of a plea of res judicata.

At all events, we are of the opinion that the facts fail to show an adjudication of the ownership of the note binding upon Reynolds

Electric & Engineering Company and overrule the assignments raising that question.

■ Another contention made by appellant is that its motion for judgment should have been granted because Reynolds was indebted to it at the time of the bankruptcy proceedings and it, therefore, had the right in law, to set off the notes it held against its claim.

We cannot concur in this contention. There was evidence showing that appellant had the notes in its possession merely as a bailee; that it had disclaimed any right to or interest in them. The jury found these facts to be true, and we cannot agree that appellant, whom the evidence shows was merely in possession of property belonging to the bankrupt, had a right to appropriate that property to its own use and benefit and offset its value against any debt owing to it by the bankrupt. Appellant has cited us to no authority so holding.

Being of the opinion that no reversible error has been shown, the judgment will be in all things affirmed.